1  Mark E. Ellis - 127159
   June D. Coleman - 191890
2  MURPHY, PEARSON, BRADLEY & FEENEY
   701 University Avenue, Suite 150
3  Sacramento, CA  95825
   Tel: (916) 565-0300
4  Fax: (916) 565-1636

5  Attorneys for Defendants
   HARRIS & ZIDE, L.L.P., ROBERT T. HARRIS, FLINT C. ZIDE
6

7                    UNITED STATES DISTRICT COURT

8                  NORTHERN DISTRICT OF CALIFORNIA

9                        SAN JOSE DIVISION

10

11
   NATHAN BRACKEN,                          Civil Action No.: C02 05146 RMW
12
          Plaintiff,                        **INDEX OF EXHIBITS IN SUPPORT OF
13                                          MOTION TO DISMISS THE
   v.                                       AMENDED COMPLAINT OF NATHAN
14                                          BRACKEN PURSUANT TO FRCP
   HARRIS AND ZIDE, L.L.P., ROBERT T.       RULE 12b(6), OR ALTERNATIVELY,
15 HARRIS AND FLINT C. ZIDE,                MOTION FOR SUMMARY
                                            JUDGMENT [FRCP 56]**
16        Defendants.
                                            **Date:  May 23, 2003
17                                          Time: 9:00 a.m.
                                            Courtroom:  6**
18

19

20

21

22

23

24

25

26

27

28
   ─────────────────────────────────────────────────────────────
   INDEX OF EXHIBITS IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT OF
   NATHAN BRACKEN PURSUANT TO FRCP RULE 12b(6), OR ALTERNATIVELY, MOTION FOR
   SUMMARY JUDGMENT [FRCP 56]              Case No.:  C02 05146 RMW

**INDEX OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| 1. | First Amended Complaint |
| 2. | **Castillo v. Carter** (S.D. Ind. February 28, 2001) slip op., 2001 U.S. Dist. LEXIS 2686 |
| 3. | Agreement between Citicorp Credit Services, Inc. and Harris & Zide |
| 4. | Summons and Complaint Against Bracken |

Dated:  March 21, 2003

MURPHY, PEARSON, BRADLEY & FEENEY

By  /s/
June D. Coleman
Attorneys for Defendants
HARRIS & ZIDE, L.L.P., ROBERT T. HARRIS,
FLINT C. ZIDE

JDC

1

Ronald Wilcox, #176601
2160 The Alameda, First Floor, Suite F
San Jose, CA 95126
Tel:  (408) 296-0400
Fax: (408) 296-0486

Attorney for PLAINTIFF

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | | |
|---|---|---|
| NATHAN BRACKEN, on behalf of himself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | NO. C 02-05146 RMW |
| v. | ) ) | |
| HARRIS & ZIDE L.L.P., ROBERT T. HARRIS, FLINT C. ZIDE, FRANK TIRRE, | ) ) ) | CLASS ACTION JURY DEMANDED |
| Defendants. | ) ) | |

### *FIRST AMENDED COMPLAINT - CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT AND CAL. BUS. & PROF. CODE*

#### Introduction

1.  Plaintiff Nathan Bracken files this Complaint seeking redress for the illegal practices of

Defendants, Harris & Zide, L.L.P., Robert T. Harris, Flint C. Zide, Frank Tirre, in connection with the

collection of alleged debts owed by consumers in violation of the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692, *et seq.*

#### *Parties*

2.      Bracken is a citizen of California who resides within this District.

11/22/03

3.     Bracken is a "consumer" as that term is defined by FDCPA § 1692(a)(3), in that the alleged debt that Defendants, Harris & Zide, L.L.P., Robert T. Harris, Flint C. Zide, Frank Tirre, sought to collect from him is a consumer debt, as defined by FDCPA § 1692a(5), in that it was originally incurred for personal, family or household purposes.

4.     Robert T. Harris is an attorney licensed to practice law in California, with a principal place of business of 1445 Huntington Drive, #300, South Pasadena, CA 91030.

5.     Flint C. Zide is an attorney licensed to practice law in California, with a principal place of business of 1445 Huntington Drive, #300, South Pasadena, CA 91030.

6.     Harris & Zide, L.L.P., is a law firm with a principal place of business of 1445 Huntington Drive, #300, South Pasadena, CA 91030.

7.     Upon information and belief, Harris and Zide are the principal owners and operators of Harris & Zide, L.L.P.

8.     Upon information and belief, Frank Tirre is an employee or agent of Robert T. Harris.

9.     Upon information and belief, Frank Tirre is an employee or agent of Flint C. Zide.

10.    Upon information and belief, Frank Tirre is an employee or agent of Harris & Zide, L.L.P.

11.    Harris is actively engaged in the business of collecting debts allegedly owed by consumers through correspondence and telephone calls.

12.    Zide is actively engaged in the business of collecting debts allegedly owed by consumers through correspondence and telephone calls.

13.    Harris & Zide, L.L.P. is actively engaged in the business of collecting debts allegedly owed by consumers through correspondence and telephone calls.

14.     Frank Tirre is actively engaged in the business of collecting debts allegedly owed by consumers through correspondence and telephone calls.

15.     Harris is a "debt collector" as defined by FDCPA § 1692a(6) in that he is regularly engaged in the collection of debts allegedly due to others.

16.     Zide is a "debt collector" as defined by FDCPA § 1692a(6) in that he is regularly engaged in the collection of debts allegedly due to others.

17.     Harris & Zide, L.L.P. is a "debt collector" as defined by FDCPA § 1692a(6) in that it is regularly engaged in the collection of debts allegedly due to others.

18.     Tirre is a "debt collector" as defined by FDCPA § 1692a(6) in that he is regularly engaged in the collection of debts allegedly due to others.

19.     Plaintiff alleges that each Defendant was acting as an agent or representative of every other Defendant in doing all of the acts described in this Complaint and at all times was acting within the course and scope of such agency or representative capacity in doing the acts described herein.

20.     Any reference to "Defendant" or "Defendants" without further qualification is meant by the Plaintiff to refer to each Defendant named above.

**Jurisdiction and Venue**

21.     This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

22.     Declaratory relief is available under 28 U.S.C. §§ 2201 and 2202.

23.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

24.     Venue is also proper in this district since Harris, Zide, Harris & Zide, L.L.P., and Tirre, can be found, have agents and/or transact business in this district.

**Factual Allegations**

25.     On or about August 2002, or a date better known to Defendants, Defendant Harris

undertook to collect a debt allegedly due to Citibank South Dakota, N.A. from Bracken.

26.     On or about August 2002, or a date better known to Defendants, Defendant Zide

undertook to collect a debt allegedly due to Citibank South Dakota, N.A. from Bracken.

27.     On or about August 2002, or a date better known to Defendants, Defendant Harris &

Zide, L.L.P. undertook to collect a debt allegedly due to Citibank South Dakota, N.A. from Bracken.

28.     On or about August 2002, or a date better known to Defendants, Defendant Frank Tirre

undertook to collect a debt allegedly due to Citibank South Dakota, N.A. from Bracken.

### *The Initial Communication bearing Harris & Zide, L.L.P. letterhead (Exhibit A)*

29.     On or about August 15, 2002, someone mailed Bracken an initial communication bearing

Harris & Zide, L.L.P. letterhead, a photocopy of which is attached as <u>Exhibit A</u>.

30.     The content of the August 15, 2002 letter violated one or more provisions of the Fair Debt

Collection Practices Act.

31.     The August 15, 2002 letter states in relevant part:

> This letter is purely a courtesy on our part to give you an opportunity to pay this
> claim and thus avoid a lawsuit.  Please understand that WE ARE A LAW FIRM
> RETAINED BY THE REFERENCED CLIENT TO FILE SUIT TO COLLECT
> DEBT IF NECESSARY.  Our approach is not to threaten action is to TAKE
> action.  This is not the first in a series of collection letters, no other notice will be
> given prior to filing suit.

> Unless you contact the legal assistant below and arrange to pay the balance due,
> court action may be commenced against you.

> The law suit against you will request judgment for principal balance due, unpaid
> interest, court costs including filing fees, (currently $80.00+) service of process
> fees and other courts costs and, where appropriate, attorneys fees which can be
> substantial.

> Unless you notify us within thirty days after receipt of this letter that the validity

FIRST AMENDED COMPLAINT, C02-05146 RMW          4

of this debt, or any portion of it, is disputed we will assume that the debt is valid. If you do notify us of a dispute, we will obtain verification of the debt and mail it to you....

Please call FRANK TIRRE at (626) 799-8444 today.

Sincerely,

ROBERT T. HARRIS/FLINT  C. ZIDE
ATTORNEY

32.   Instead of a signature, the letter bears an illegible squiggle above the names "ROBERT T. HARRIS/FLINT C. ZIDE."

33.   Neither Defendants nor original creditor, Citibank South Dakota, N.A., has filed a lawsuit against Plaintiff Bracken.

34.   Upon information and belief, Exhibit A is a form letter.

35.   Upon information and belief, Defendants sent form letters containing language substantially similar or materially identical to that contained in Exhibit A to hundreds, if not thousands, of consumers in California.

36.   Upon information and belief, Defendants sent form letters containing language substantially similar or materially identical to that contained in Exhibit A to hundreds, if not thousands, of consumers across the United States.

37.   Upon information and belief, neither Harris nor any attorney associated with Harris performs any meaningful review of account files before sending collection letters substantially similar or materially identical to the letter attached as Exhibit A.

38.   Upon information and belief, neither Zide nor any attorney associated with Zide performs any meaningful review of account files before sending collection letters substantially similar or materially identical to the letter attached as Exhibit A.

FIRST AMENDED COMPLAINT, C02-05146 RMW          5

39.     Upon information and belief, neither Harris & Zide, L.L.P., nor any attorney associated with the office of Harris & Zide, L.L.P., performs any meaningful review of account files before sending collection letters substantially similar or materially identical to the letter attached as <u>Exhibit A</u>.

40.     On or about February 21, 2002 someone mailed Laura Connors an initial communication bearing Harris and Zide L.L.P. letterhead, a photocopy of which is attached as <u>Exhibit B</u>.

41.     The February 21, 2002 demand letter attached as <u>Exhibit B</u> is nearly identical to the August 15, 2002 letter attached as <u>Exhibit A</u>.

42.     Upon information and Bracken believes Defendants sent form letters substantially similar or materially identical to <u>Exhibit A</u> and <u>Exhibit B</u> to hundreds, if not thousands, of Consumers in California.

<div align="center">

**COUNT I**

***Violations of Sections 1692e, e(2), e(5) and e(10) of the FDCPA***

</div>

43.     Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1-40 as if set forth fully in this Count.

44.     This count is brought on behalf of Nathan Bracken, individually, and on behalf of a class consisting of all persons in California who, according to Defendants' records: (a) within one year prior to the filing of this action; (b) were sent a collection letter bearing Harris & Zide, L.L.P.'s letterhead in a form materially identical or substantially similar to the letter sent to the Plaintiff and attached as <u>Exhibit A</u>; and (c) which was not returned by the postal service as undelivered.

45.     Pursuant to Federal Rule of Civil Procedure 23, a class action is appropriate and preferable in this case because:

(A)     Based on the fact that the collection letters at the heart of this litigation are mass-mailed form letters, the class is so numerous that joinder of all members is impractical.

(B)     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members.  The principal questions presented by this case are whether the letter sent by Defendants violates §1692e and its subsections by using language designed to create the belief in the least sophisticated consumer that a lawsuit would be recommended and filed against the consumer for the alleged debt and by using language designed to create the belief that there was meaningful involvement by an attorney in reviewing the account.

(C)     The only individual issue is the identification of the consumers who received the letters (*i.e.* the class members) which is a matter capable of ministerial determination from the Defendants' records.

(D)     Bracken's claims are typical of those of the class members.  All are based on the same facts and legal theories.

(E)     Bracken will fairly and adequately represent the class members' interests and his interests are consistent with the class members' interests.  Bracken has retained counsel experienced in bringing class actions and collection abuse claims.

46.     A class action is superior for the fair and efficient adjudication of the class members' claims.

47.     Congress specifically envisions class actions as a principal means of enforcing the FDCPA.  *See* 15 U.S.C. § 1692k.

48.     The members of the class are generally unsophisticated consumers, whose rights will not be vindicated in the absence of a class action.

FIRST AMENDED COMPLAINT, C02-05146 RMW          7

49.   Prosecution of separate actions by individual members of the classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

50.   If the facts are discovered to be appropriate, Bracken will seek to certify the class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

### Defendants' Violations of §1692e, e(5) and e(10)

51.   Collection letters, such as those sent by Defendants, are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

52.   Section 1692e of the FDCPA states that a debt collector cannot "use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

53.   Sections 1692e(5) and e(10) state that a debt collector cannot "threaten to take any action that is not intended to be taken" and cannot use "any false representation or deceptive means to collect or attempt to collect any debt."

54.   Section 807(5) of the Federal Trade Commission commentary to the FDCPA states in relevant part that:

> A debt collector may not state or imply that he or any third party may take any action unless such action is legal and there is a reasonable likelihood, at the time the statement is made, that such action will be taken. A debt collector may state that certain action is possible, if it is true that such action is legal and is frequently taken by the collector or creditor with respect to similar debts; however, if the debt collector has reason to know there are facts that make the action unlikely in the particular case, a statement that the action was possible would be misleading.
>
> * * *
>
> A debt collector's implication, as well as a direct statement, of planned legal action may be an unlawful deception. For example, reference to an attorney or to legal proceedings may mislead the debtor as to the likelihood or imminence of legal action.
>
> * * *

FIRST AMENDED COMPLAINT, C02-05146 RMW            8

Lack of intent may be inferred <u>when the amount of the debt is so small as to make the action totally unfeasible</u> or when the debt collector is unable to take the action because the creditor has not authorized him to do so.

55.   On information and belief, the same form letter is mailed to consumers without any appraisal being made, at the time of mailing, to determine whether litigation on the alleged debt should be recommended

56.   The form letter mailed to the Plaintiff on or about August 15, 2002 was mailed to other consumers in a computer-generated series of letters, based upon the type of collection package purchased.

57.   On information and belief, at the time that Defendants mailed the form letters, represented by the letter sent to Plaintiff Bracken on or about August 15, 2002, Defendants did not intend to litigate the alleged debts and in fact, performed no meaningful review of the debt necessary to form such an intention.

58.   On information and belief, at the time that Defendants mailed the form letters, represented by the letter sent to the Plaintiff on or about August 15, 2002, Defendants' practice was <u>not</u> to earnestly recommend that the creditor pursue litigation.

59.   Defendants' collection letters, in the form represented by <u>Exhibit A</u>, are in violation of the FDCPA because they threaten the least sophisticated consumer with the imminent likelihood of a lawsuit when such action is not intended to be taken nor likely to ever be taken.

60.   Defendants' form letters, represented by the letter sent to Plaintiff Bracken on or about August 15, 2002, violate the FDCPA in that it is Defendants' practice to mail such letters: (1) regardless of the size of the debt; (2) in spite of the impracticability of the creditor commencing litigation; and (3) regardless of whether the creditor has authorized Defendants or any other attorneys to proceed with a lawsuit based upon Defendants' recommendation.

FIRST AMENDED COMPLAINT, C02-05146 RMW          9

61.     Defendants' use of the form letter sent to Plaintiff Bracken on or about August 15, 2002 violates FDCPA §§ 1692e, e(5), and e(10) in that it attempts to create the belief in the least sophisticated consumer that there is a realistic likelihood he or she will face imminent litigation.

62.     Defendants are liable to Bracken and the members of the class for violating FDCPA §§ 1692e, e(5), and e(10).

WHEREFORE, Plaintiff requests that this Court grant the following relief in his favor and on behalf of the class, against Defendants:

    A)  Statutory damages as provided by §1692k of the FDCPA;

    B)  Attorneys' fees, litigation expenses and costs incurred in bringing this action;

    C)  A declaration that Defendants' form letters, represented by the form sent to the Plaintiff on or about August 15, 2002, violate the FDCPA; and

    D)  Any other relief that this Court deems appropriate and just.

## COUNT II

### *Violations of Sections 1692e, e(3) and e(10) of the FDCPA*

63.     Plaintiff hereby restates, realleges, and incorporates herein by reference, paragraphs 1-59 as if set forth fully in this Count.

64.     This Count is brought on behalf of the class described in Count I above.

### *Defendants' Violations of §1692e, e(3), and e(10)*

65.     Section 1692e of the Fair Debt Collection Practices Act provides, in relevant part:

> *A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section . .*

\*          \*          \*

FIRST AMENDED COMPLAINT, C02-05146 RMW    10

> (3)   *The false representation or implication that any individual is an attorney or that any communication is from an attorney.*

<div align="center">*       *       *</div>

> (10)  *The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.*

66.   On information and belief, Defendants send out thousands of letters under Harris & Zide, L.L.P. attorney letterhead.

67.   On information and belief, Defendants use a mechanized computer-driven process to send these letters, and most variable information (such as the name of the creditor, the alleged amount due, and the name of the consumer) is inserted into pre-defined "fields" by a word-processor or other computer-driven document assembly software.

68.   Further, Plaintiff is informed and believes, and on that basis alleges, that the information to be inserted in these fields is sent to Defendants *en masse*, as electronically-stored information, via modem or other computer-readable format.

69.   The letters are then created directly from this electronically stored information.

70.   On information and belief, no attorney meaningfully reviews or authorizes any particular individual letter before it is sent.

71.   Rather, the only attorney involvement is to review the form of letter sent and to define some general parameters as to the intended recipients.

72.   This allegation is bolstered by the fact that the letter sent to Bracken does not contain a signature, only an illegible squiggle.

73.   This allegation is further bolstered by the fact that all inquiries are directed to a non-attorney debt collector, Defendant Frank Tirre.

74.     Defendants violated § 1692e of the FDCPA by sending the computer-generated collection letters on attorney letterhead to Plaintiff and the class members.

75.     The letters deceptively purport to be "from an attorney" when in fact the letters, which are on "Harris & Zide, L.L.P." attorney-letterhead, are not from an attorney in any meaningful sense.

76.     No attorney reviews the file or makes determinations about the legal validity of the debt before the letters are sent or interacts with the consumer.

77.     "Harris & Zide, L.L.P." is a collection agency masquerading as a law firm, which uses clerical workers, not attorneys, to collect debts using the power and leverage of a law license.

78.     Defendants are liable to Plaintiff and the class members for their violations of §§ 1692e, e(3), and e(10) of the FDCPA.

WHEREFORE, Plaintiff requests that this Court grant the following relief in his favor and on behalf of the class, against Defendants:

A)  Statutory damages as provided by §1692k of the FDCPA;

B)  Attorneys' fees, litigation expenses and costs incurred in bringing this action;

C)  A declaration that Defendants' practice of sending computer-generated form collection letters on attorney letterhead without prior attorney review violates the FDCPA; and

D)  Any other relief that this Court deems appropriate and just.

## COUNT III

### Violations of §1692g of the Fair Debt Collection Practices Act

79.     Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1-75 as if set forth fully in this Count.

FIRST AMENDED COMPLAINT, C02-05146 RMW        12

80. This Count is brought on behalf of the class described in Count I above.

81. Collection letters, such as those sent by Defendants, are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

82. Section 1692g(a) of the Fair Debt Collection Practices Act either requires that a debt collector include a validation notice with, or send it within five (5) days of, the initial communication from the debt collector to the consumer.

83. This validation notice is intended to advise the consumer as to certain federal rights in connection with a procedure under which a consumer may dispute a debt, request verification of a debt, or obtain certain information about the creditor within 30 days after receipt of the notice.

84. Among other things, the validation notice must contain

> [A] statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector....

85. Under federal law, this validation notice must be effectively communicated, and may not be overshadowed, confounded or diluted as seen from the perspective of the least sophisticated consumer.

86. And if the consumer disputes the debt, then FDCPA § 1692g(b) comes into play, providing as follows:

**Disputed debts**

> If the consumer notifies the debt collector **in writing** within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. (emphasis added)

87.    Defendants violated § 1692g of the FDCPA by failing to specify in the letter attached as Exhibit A that a dispute must be in writing.

88.    By failing to specify that the dispute must be in writing, Defendants attempt to lull consumers into believing that an oral dispute is sufficient to preserve their rights.

89.    Defendants violated § 1692g of the FDCPA by providing a defective debt validation-verification notice in that the language provided was contradictory and confusing.

90.    Defendants' letter is attached as Exhibit A

91.    Defendants are liable to Plaintiff Bracken and the class for violating FDCPA § 1692g(a).

WHEREFORE, Plaintiff requests that this Court grant the following relief in his favor and on behalf of the class, against Defendants:

A)  Statutory damages as provided by §1692k of the FDCPA;

B)  Attorneys' fees, litigation expenses and costs incurred in bringing this action;

C)  A declaration that the form of Defendants' validation notice, as set forth in the letter to Plaintiff dated August 15, 2002, violates the FDCPA; and

D)  Any other relief that this Court deems appropriate and just.

## COUNT IV

### *Violations of the CUBPA, Bus. & Prof. Code 17200*

87.    Plaintiffs re-allege each allegation of each paragraph above as if fully set forth herein.

88.    This Count is brought on behalf of the class described in Count I above.

89.    Plaintiff brings this cause of action as a private attorney general as allowed by Bus. & Prof. Code § 17204, ("CUBPA").

90.    CUBPA prohibits business acts and practices that are unlawful, unfair or

fraudulent. Bus. & Prof. Code § 17200-17205.

91.     Defendants' policy and procedures of sending the collection notices, attached as Exhibit A to the First Amended Complaint to Plaintiffs and members of the general public outweighs the utility of Defendants' acts and consequently constitutes an unfair act or practice within the meaning of Bus. & Prof. Code § 17200.

92.     Defendants' policy and practice of sending the collection notices attached as Exhibit A to the First Amended Complaint violates the FDCPA as alleged herein and consequently Defendant's practice constitutes an unlawful business practice within the meaning of Bus. & Prof. Code § 17200.

93.     Defendants' policy and practice of sending the collection notices attached to the First Amended Complaint as Exhibit A is likely to mislead the general public and consequently constitutes a fraudulent act or practice within the meaning of Bus. & Prof. Code § 17200.

94.     Plaintiffs and members of the public are entitled to injunctive relief against Defendant for its unfair, unlawful and fraudulent act or practice as provided by Bus. & Prof. Code § 17203.

**WHEREFORE**, the Plaintiff asks that this Court enter judgment in their favor and in favor of the members of the class in Count I and against Harris and Zide, L.L.P., Robert T. Harris, Flint C. Zide and Frank Tirre, each individually and jointly and severally as joint venturers, and requests that the Court grant the following relief in her favor and on behalf of the class and against defendants:

a)     Enjoining defendant from sending notices in the form of Exhibit A, that

        violate the, Fair Debt Collection Practices Act and the California Unfair Business

FIRST AMENDED COMPLAINT, C02-05146 RMW          15

1   Practices Act, to California residents.

2   b)   Attorneys' fees, litigation expenses, and costs.

3   c)   Such other and further relief as is appropriate.

4   ***Demand for Jury Trial***

5

6   Please take notice that Plaintiff demands trial by jury in this action.

7

8   **Dated:**   **San Jose, California**

9   **January 22, 2003**

10   **Respectfully submitted,**

11   /s/ Ronald Wilcox_____
     **Ronald Wilcox**
     One of Plaintiff's Attorneys

12

13   <u>Attorneys for Plaintiff</u>
     Ronald Wilcox (Bar #176601)

14   2160 The Alameda, First Floor, #F
     San Jose, CA 95126

15   Tel: (408) 296-0400
     Fax: (408) 296-0486

16

17   Brian L. Bromberg
     Brian L. Bromberg, P.C.

18   32 Broadway, Suite 1614
     New York NY  10004

19   Tel: (212) 248-7906
     Fax: (212) 248-7908

20   (Not admitted to practice in California)

21

22   Lance A. Raphael
     Stacy M. Bardo
     Attorneys at Law

23   25 East Washington, Suite 1805
     Chicago, IL  60602

24   Tel: (312) 782-5808
     Fax: (312) 377-9930

25   (Not admitted to practice in California)

FIRST AMENDED COMPLAINT, C02-05146 RMW        16

# HARRIS & ZIDE, L.L.

1445 HUNTINGTON DRIVE, SUITE 300
SOUTH PASADENA, CALIFORNIA 91030
(626) 799-8444

ROBERT T. HARRIS
FLINT C. ZIDE
ARTHUR W. SHWACHMAN
DEBT COLLECTION ATTORNEYS

4145                                          08/15/02

NATHAN L BRACKEN
1147 AYALA ST
APT 4
SUNNYVALE, CA 94086-5716

Re: CITIBANK SOUTH DAKOTA, N.A.  Account # 4128004047657912
Total Balance Due: $3,298.38

Dear NATHAN L BRACKEN:

We represent CITIBANK SOUTH DAKOTA, N.A.. Your account has been referred to us for action to collect the above balance due on your CITIBANK SOUTH DAKOTA, N.A. account.

This letter is purely a courtesy on our part to give you an opportunity to pay this claim and thus avoid a lawsuit. Please understand that WE ARE A LAW FIRM RETAINED BY THE REFERENCED CLIENT TO FILE SUIT TO COLLECT THIS DEBT IF NECESSARY. Our approach is not to threaten action it is to TAKE action. This is not the first in a series of collection letters, no other notice will be given prior to filing suit.

Unless you contact the legal assistant listed below and arrange to pay the balance due, court action may be commenced against you.

The law suit against you will request judgment for principal balance due, unpaid interest, court costs including filing fees, (currently $80.00+) service of process fees and other court costs and, where appropriate, attorneys fees which can be substantial.

Unless you notify us within thirty days after receipt of this letter that the validity of this debt, or any portion of it, is disputed we will assume that the debt is valid. If you do notify us of a dispute, we will obtain verification of the debt and mail it to you. If the above creditor is not your original creditor and you submit a written request within the 30 day period for the name of the original creditor, we will supply such information to you. This communication is an attempt to collect a debt, and information obtained will be used for that purpose. We are debt collection attorneys.

Please call FRANK TIRRE at (626) 799-8444 today.

Sincerely,

ROBERT T. HARRIS / FLINT C. ZIDE
ATTORNEY

EXHIBIT A

# HARRIS & ZIDE, L.L.

1445 HUNTINGTON DRIVE, SUITE 300
SOUTH PASADENA, CALIFORNIA  91030
(626)  799-8444

ROBERT T.  HARRIS
FLINT   C.  ZIDE
ALEX  L.  SIIIA
DEBT  COLLECTION  ATTORNEYS

February 21, 2002
LAURA D CONNORS
1055 BORANDA AVE
APT 5
MOUNTAIN VIEW, CA  94040-3160

Re: Citibank South Dakota N.A.   Account # 5424180140063824
    Total Balance Due: $4,289.05

Dear LAURA D CONNORS:

We represent Citibank South Dakota N.A.. Your account has been referred to us for action to collect the above
balance due on your Citibank South Dakota N.A. account.

This letter is purely a courtesy on our part to give you an opportunity to pay this claim and thus avoid a lawsuit.
Please understand that WE ARE A LAW FIRM RETAINED BY THE REFERENCED CLIENT TO FILE SUIT
TO COLLECT THIS DEBT IF NECESSARY. Our approach is not to threaten action it is to TAKE action.
This is not the first in a series of collection letters, no other notice will be given prior to filing suit.

Unless you contact the legal assistant listed below and arrange to pay the balance due, court action may be
commenced against you.

The law suit against you will request judgment for principal balance due, unpaid interest, court costs including
filing fees, (currently $80.00+) service of process fees and other court costs and, where appropriate, attorneys
fees which can be substantial.

Unless you notify us within thirty days after receipt of this letter that the validity of this debt, or any portion of
it, is disputed we will assume that the debt is valid. If you do  notify us of a dispute, we will obtain verification
of the debt and mail it to you.  If the above creditor is not your original creditor and you submit a written request
within the 30 day period for the name of the original creditor, we will supply such information to you.  This
communication is an attempt to collect a debt, and information obtained will be used for that purpose.  We are
debt collection attorneys.

Please call TIRRE at (626) 799-8444 today.

Sincerely,

ROBERT T. HARRIS / FLINT C. ZIDE
ATTORNEY

**EXHIBIT B**

3 of 3 DOCUMENTS

**RAFAEL CASTILLO, Plaintiff, v. ROBERT B. CARTER, Defendant.**

**CAUSE NO. IP 99-1757-C H/G**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION**

*2001 U.S. Dist. LEXIS 2686*

**February 28, 2001, Decided**

**DISPOSITION:**

[*1] Plaintiff's motion for summary judgment denied. Defendant's motion for judgment on the pleadings denied. Defendant's motion to strike plaintiff's responses to the motion for judgment on the pleadings denied as moot.

**COUNSEL:**

For CASTILLO, RAFAEL, plaintiff: CLIFFORD W SHEPARD, CONSUMER PROTECTION LAW OFFICE, INDIANAPOLIS, IN.

For CARTER, ROBERT B., defendant: G RONALD HEATH, JOHNSON SMITH PENCE & HEATH LLP, INDIANAPOLIS, IN.

**JUDGES:**

DAVID F. HAMILTON, JUDGE, United States District Court, Southern District of Indiana.

**OPINIONBY:**

DAVID F. HAMILTON

**OPINION:**

ENTRY ON PENDING MOTIONS

Plaintiff Rafael Castillo alleges in this case that defendant Robert B. Carter violated the federal Fair Debt Collection Practices Act (FDCPA), *15 U.S.C. § 1692 et seq.*, in attempting to collect a debt from Castillo for non-payment of rent. Plaintiff has filed a motion for summary judgment as to liability and several affirmative defenses. Defendant has filed a motion labeled a motion for judgment on the pleadings. As explained below, both motions are denied.

*Undisputed Facts*

The following facts are undisputed for purposes of the pending motions. For purposes of the FDCPA, plaintiff Castillo [*2] is a "consumer" as defined in *15 U.S.C. § 1692a*(3), and defendant Carter is a "debt collector" as defined in *15 U.S.C. § 1692a*(6).

In 1999, Heritage Park Apartments engaged defendant Carter as an attorney to collect a debt from Castillo. Carter then sent a letter to Castillo on October 13, 1999. The letter, which is Exhibit A to the complaint, stated in relevant part as follows:

RE: Non-Payment of Rent for October: $ 475; Late Fee $ 70

to which may be added any other sums that may become due, including attorney fees, if so provided in your lease, plus court costs.

This law office represents Heritage Park Apts., where, I have been informed, you currently reside pursuant to a written lease agreement. We have been advised that you are currently in default of your lease for failure to pay your rent, and said amounts are currently due and owing. Even though we are filing in court for eviction, your rights to dispute and for validation, as stated below, remain in full force and effect.

You have a right to dispute the validity of this debt or any part thereof. Unless you notify this law office in WRITING within thirty (30) [*3] days after receipt of this notice that the validity of this debt, or any part thereof, is disputed, the debt will be assumed to be valid. If you notify this law office in WRITING within thirty (30) days after receipt of this notice that this debt, or any part thereof, is disputed, verification of the debt will be

sent to you. Upon your WRITTEN request to this law office within thirty (30) days after receipt of this notice, the name and address of the original creditor will be provided to you if different from the current creditor. Upon your WRITTEN notice to this law office within thirty (30) days after your receipt of this notice of a dispute, or requesting proof of this debt or requesting the name of the original creditor, collection efforts by this law office through litigation or otherwise will be suspended until written validation proof of debt or the name of the original creditor has been mailed to you. This is an attempt to collect a debt, any information obtained will be used for that purpose. This is a communication from a debt collector.

Castillo asserts in his undisputed affidavit that he believed, after reading Carter's letter, that he had to notify Carter in writing [*4] if he questioned the validity of the debt and that he could not calculate the total amount of the debt to Heritage Park Apartments.

*The Claims*

Plaintiff Castillo claims that Carter's letter violated the FDCPA in several ways. First, Castillo contends that the letter violated *15 U.S.C. § 1692g(a)(3)* by stating that notice of any dispute about the validity of the debt would have to be in writing. This issue has divided the federal courts that have considered it.

Section 1692g provides in its entirety:

(a) Notice of debt; contents. Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing --

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement [*5] that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed debts. If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by [*6] the debt collector.

(c) Admission of liability. The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

Plaintiff Castillo argues that § 1692g(a)(3) gives him the right to dispute the validity of the debt not only in writing but in any way, "whether by letter, telegram, telephone, or even smoke signals so long as the consumer notifies the debt collector of the dispute." He points out that subsection (a)(3), unlike subsections (a)(4) and (a)(5), does not expressly refer to a "writing" or a "written request." Thus, Castillo argues, defendant Carter's reference to a notice "in WRITING" was a deceptive and unfair practice that violated the FDCPA.

Several federal courts have adopted plaintiff's view. See *Ong v. American Collections Enterprise, Inc., 1999 U.S. Dist. LEXIS 409, 1999 WL 51816* (E.D.N.Y. Jan. 15, 1999) (reviewing cases on both sides of issue); see also *Castro v. ARS National Services, Inc., 2000 U.S. Dist. LEXIS 2618, 2000 WL 264310* (S.D.N.Y. March 8, 2000); *Reed v. Smith, Smith & Smith, 1995 U.S. Dist. LEXIS 22013, 1995 WL 907764*, at *2 (M.D. La. Feb. 8, 1995); *Young v. Credit Bureau of Lockport, Inc., 1989 WL 79054,* [*7] at *1-2 (W.D.N.Y. July 17, 1989); *Harvey v. United Adjusters, 509 F. Supp. 1218, 1221 (D. Ore. 1981).*

Defendant Carter relies on the Third Circuit's decision in *Graziano v. Harrison, 950 F.2d 107, 112 (3d Cir. 1991). Graziano* affirmed a district court's ruling that a notice like Carter's, stating that a message disputing the validity of the debt should be sent in writing, did not violate § 1692g(a)(3). At least one other district court in this circuit has followed the Third Circuit on this issue. See *Sturdevant v. Thomas E. Jolas, P.C., 942 F. Supp. 426, 429 (W.D. Wis. 1996).*

Case5:02-cv-05146-RMW   Document29   Filed03/21/03   Page23 of 41

2001 U.S. Dist. LEXIS 2686, *                                                    Page 3

The Third Circuit acknowledged the arguments based on differences of statutory language between the subsections. The court then explained its view:

The opinions relied on by Graziano have reasoned that the statutory scheme teaches a different lesson. Since subsections (a)(4) and (a)(5) expressly call for written communications, the absence of such a requirement in subsection (a)(3) is strong evidence -- so the opinions argue -- that Congress advertently omitted an analogous requirement in subsection (a)(3). See *Bailey* at 5; *Young* at 3. Nevertheless, **[*8]** we are of the view that, given the entire structure of section 1692g, subsection (a)(3) must be read to require that a dispute, to be effective, must be in writing.

. Subsection (a)(3) states that unless the debtor disputes the debt within thirty days of receipt of notice, the debt collector will assume the debt to be valid. Subsection (a)(4) states that if the debtor disputes the debt in writing within thirty days, the debt collector must obtain verification of the debt and must send the debtor a copy of the verification. Subsection (a)(5) states that, if the debtor makes a written request, the debt collector must provide the name and address of the original creditor. Subsection (b) states that if the debtor disputes the debt in writing within thirty days, the debt collector must cease collection efforts until the debt collector has verified the debt. Adopting Graziano's reading of the statute would thus create a situation in which, upon the debtor's non-written dispute, the debt collector would be without any statutory ground for assuming that the debt was valid, but nevertheless would not be required to verify the debt or to advise the debtor of the identity of the original creditor **[*9]** and would be permitted to continue debt collection efforts. We see no reason to attribute to Congress an intent to create so incoherent a system. We also note that there are strong reasons to prefer that a dispute of a debt collection be in writing: a writing creates a lasting record of the fact that the debt has been disputed, and thus avoids a source of potential conflicts. We therefore conclude that subsection (a)(3), like subsections (a)(4) and (a)(5), contemplates that any dispute, to be effective, must be in writing. The district court was not in error in determining that the requirement of a writing did not render the statutory notice invalid.

*950 F.2d at 112* (footnotes omitted).

The Seventh Circuit has instructed that district courts should "give most respectful consideration to the decisions of the other courts of appeals and follow them whenever they can," *Colby v. J.C. Penney Co., 811 F.2d 1119, 1123 (7th Cir. 1987)*, but also that district courts should consider those decisions critically, see *Citizens for a Better Environment v. Steel Co., 230 F.3d 923, 928*

*(7th Cir. 2000)* (reversing district court decision following **[*10]** other circuits' decisions that did not explain their reasoning persuasively). This court has considered the issue under § 1692g(a)(3) and agrees with the Third Circuit for the reasons stated by that court in *Graziano*, as well as with the district court in *Sturdevant*.

The parties have addressed in some detail the First Circuit's decision in *Brady v. Credit Recovery Co., 160 F.3d 64 (1st Cir. 1998)*. The specific issue in that case was whether a debt collector was entitled to summary judgment on a claim under *15 U.S.C. § 1692e(8)*, which prohibits a debt collector from communicating to any person credit information "which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." The debt collector had received a telephone call disputing the debt in question, but had later reported the debt in question to credit reporting agencies without also reporting that it was disputed. The district court had granted summary judgment, citing the Third Circuit in *Graziano* and extending that case's reasoning to § 1692e(8). See *Brady v. Credit Recovery Co., 26 F. Supp. 2d 201, 203-04 (D. Mass. 1998)*. **[*11]**

The First Circuit reversed and concluded that a writing requirement was not implied in § 1692e(8). The First Circuit did not address *Graziano* explicitly. The First Circuit's reasoning also appears to have left open the possibility of distinguishing between § 1692g(a)(3) and § 1692e(8) on this issue. See *Brady, 160 F.3d at 66-67*. For example, § 1692g addresses the contents of communications to the alleged debtor, and there is little doubt that a debtor who communicates a dispute in writing is better off than one who does not use a writing. On the other hand, § 1692e(8) is intended to prohibit certain communications by debt collectors (*i.e.*, omissions of the fact that a debt is disputed), so that its interpretation in *Brady* gives debtors more protection. Although there is some tension between the approaches to statutory interpretation taken in *Graziano* and *Brady*, *Graziano* remains the only circuit decision expressly deciding the issue now before this court, and its reasoning is persuasive. Accordingly, plaintiff is not entitled to summary judgment on the theory that the notice violated § 1692g(a)(3) by stating that messages disputing the validity **[*12]** of the debt should be in writing. n1

n1 With this resolution, the court need not consider at this point whether the mere existence of the Third Circuit's decision in *Graziano* would provide a valid defense to a claim like the one presented here, even if the Seventh Circuit or the

Case5:02-cv-05146-RMW   Document29   Filed03/21/03   Page24 of 41

2001 U.S. Dist. LEXIS 2686, *                                    Page 4

Supreme Court might later disagree. It is easy to imagine that if Carter had sent another consumer-debtor a collection letter that did *not* state that dispute messages should be in writing, the recipient of that letter could have sued him for failing to include that statement. That plaintiff would argue that the debt collector had an obligation to state expressly that the message should be in writing in order to give fair notice of what action is required to dispute the debt and to be consistent with *Graziano*. In fear of such a claim, a debt collector who is aware of *Graziano* might reasonably decide to include the writing requirement, as Carter did in this case. The court doubts that Congress meant to impose liability on debt collectors who do not correctly anticipate the ultimate resolution of such issues that have divided the federal courts in ways that could trigger strict liability in either direction.

[*13]

The other issues presented by the parties' pending motions plainly are not suitable to summary judgment on this record. Whether Carter's letter was actually misleading to an "unsophisticated consumer" with respect to the amount of the debt or the reference to

"court costs" cannot be decided against defendant on this record and depends on resolution of factual disputes. In addition, defendant is not entitled to judgment on the pleadings based on the contents of plaintiff's witness list. If defendant wishes to file a proper motion for summary judgment presenting the issue of the type of proof needed to establish that a communication is misleading, he may do so promptly.

For the reasons stated above, plaintiff's motion for summary judgment is denied. Defendant's motion for judgment on the pleadings is also denied. Defendant's motion to strike plaintiff's responses to the motion for judgment on the pleadings is denied as moot. This action shall be set for a jury trial beginning at 9:00 a.m. on Monday, August 27, 2001, with a final pretrial conference on Friday, August 17, 2001, at 2:30 p.m. in Room 330, U.S. Courthouse, Indianapolis, Indiana.

So ordered.

Date: February 28, 2001 [*14]

DAVID F. HAMILTON, JUDGE

United States District Court

Southern District of Indiana

Received   Nov 02 2001   003

JUL 0 3 2001

# AGREEMENT

This Agreement is between Citicorp Credit Services, Inc., a subsidiary of Citigroup, Inc. with offices located at 7930 NW 110th Street, Kansas City, MO 64153 ("CCSI" herein), and _____Robert T. Kannis_____, an attorney/law firm licensed to practice law in the state of ___California_____, with offices located at ____1445 Huntington Dr. Ste 300____ ___South Pasadena, CA 91030_____ ("Attorney" herein).

## DEFINITIONS

For the purposes of this agreement, the following words and terms shall have the meaning ascribed to them below:

1. **Accounts:** means credit card or other financial accounts issued by CBSD, DCUS or UBNA, or any other affiliate of Citigroup.
2. **Affiliates:** means any corporate subsidiary owned by Citigroup, Inc., and includes but is not limited to CBSD, CBNV. DCUS and UBNA.
3. **Agreement:** when capitalized herein shall mean the executed form of this written document and all documents incorporated therein by reference, whether or not attached.
4. **Bankruptcy Litigation:** means any action or lawsuit brought by or against an affiliate in a federal bankruptcy court, including lawsuits brought to prevent discharge of a delinquent debt pursuant to section 523(a) of the Bankruptcy Code.
5. **Batch:** means the number of accounts placed with Attorney for collection on a monthly or annual basis.
6. **Citibank (Nevada), NA ("CBNV" herein):** is the national bank that purchases some of the CBSD credit card receivables and is the real party in interest with respect to collection lawsuits filed to collect such debt.
7. **Citibank (South Dakota), NA ("CBSD" herein):** is the national bank that issues most Citibank credit cards and is the real party in interest for litigation purposes with respect to some such accounts.
8. **Citibank (USA), NA ("CBUSA" herein):** is the national bank that issues some Citibank credit cards and is the real party in interest in lawsuits filed to collect such debt.
9. **Citicorp Credit Services, Inc. ("CCSI" herein):** is an affiliate service provider retained by CBSD, CBNV, DCUS and UBNA, pursuant to written agreements, to perform support services, including collecting outstanding debt.
10. **Citigroup, Inc. ("Citigroup" herein):** is the parent holding company that directly or indirectly owns CCSI and the subsidiary corporations engaged in the bankcard business that it services.
11. **Court Costs:** shall mean the costs incurred to file a lawsuit and to serve pleadings on debtors being sued. Without ...
12. **Diners Club USA (DCUS" herein):** shall mean the issuer and creditor of record for the Diners Club credit card. DCUSA is a subsidiary of CBSD.

2

13. **Dormant Judgment:** shall mean any judgment on which money has not been collected by Attorney for a period of two (2) years.

14. **Fraud Litigation:** shall mean lawsuits filed against a person other than the named cardholder to collect debt incurred by the unauthorized use of a credit card. The term shall include but not be limited to lawsuits filed to collect charges made after the date of the cardholder's death.

15. **Gross Debt Collected:** shall mean the amount of money collected by Attorney before deducting attorney fees, court costs and other litigation expenses.

16. **Litigation Management System:** shall mean the computer software system used to track the progress of collection, fraud and bankruptcy litigation and to calculate gross/net debt collected on batches that have been litigated to judgment or otherwise settled pre-suit or pre-judgment.

17. **Net Debt Collected:** shall mean gross debt collected, less net litigation expense on an individual account basis or by batch.

18. **Universal Bank, NA ("UBNA" herein):** is the affiliate of Citigroup that issues the AT&T Universal credit card and is the real party in interest for litigation purposes.

19. **Universal Card Services, Inc. ("UCS" herein):** is the affiliate service provider retained by UBNA by written agreement to provide support services, including debt collection activity, with respect to AT&T/Universal card accounts.

## ARTICLE 1: PURPOSE

The purpose of this Agreement is to retain Attorney to perform legal services. Such legal services shall include, but are not intended to be limited to collection, fraud and bankruptcy litigation and probate matters with respect to a specific affiliate's accounts and/or receivable. To the extent Attorney is retained to obtain judgment to collect debt, Attorney shall due diligence and reasonable care to enforce the judgment by execution, garnishment or other available enforcement procedures. Attorney shall be retained to perform specific legal services for which CCSI has agreed to pay a fee Exhibit A.

## ARTICLE 2: LITIGATION MANAGEMENT SYSTEMS

**2.1 Computer Systems:** Understanding that adequate computer systems critically important in managing collection litigation conducted on a large scale, CCSI shall have the right to require Attorney, at Attorney's expense, to use a specific computer system that is dedicated to the management of collection, fraud or bankruptcy litigation. CCSI may, in its discretion, use third party vendors to refer accounts to Attorney. If it does, Citibank shall have the right to require Attorney to use the computer system provided by the vendor, again at the Attorney's expense.

**2.2 Systemic Reports:** CCSI shall have the right to require Attorney to produce, or cooperate in producing, computer system generated reports at a frequency to be determined by CCSI. Such reports shall provide whatever information CCSI may from time to time require, regardless of whether the reports are generated by a computer system owned by Attorney or an outside vendor.

**2.3 Connection Expense:** CCSI shall assume and pay any expense required to connect its computer system to the attorney's computer system, unless the connection is made

through the internet, in which event CCSI and Attorney shall each assume and pay their own expense to connect to the internet. In the event CCSI uses the computer system of a third party vendor, each party shall assume and pay their individual expense of connecting to the vendor's system.

**2.4 Judicial and Financial Information:** Attorney shall maintain the following information about each individual account litigated on the computer system required by CCSI: date of referral; amount due; name of the court in which suit was filed; index/docket numbers; date and total amount of judgment broken down to reflect principal debt, reimbursed court costs and attorney fees, plus any accrued post-judgment interest; the extent to which the judgment has been satisfied.

## ARTICLE 3: RIGHTS AND DUTIES OF ATTORNEY

**3.1 Collection and Fraud Litigation:** Attorney shall file and prosecute lawsuits to collect debt authorized by the named cardholder or unauthorized debt incurred by third parties within whatever time frames CCSI may require in its work standards. However, Attorney shall use his/her own judgment and discretion in determining whether the facts involved merit filing the lawsuit, and whether is appropriate to file the lawsuit within thirty (30) days after mailing the initial demand letter and FDCPA debt validation notice. CCSI may manage the timeliness of Attorney filing lawsuits using its own work standards or those of an third party vendor. Management of Attorney's duties with respect to collection lawsuits shall be performed by the Litigation Management Unit located at CCSI site in Kansas City, Missouri. Any attempt to collect charges made on credit card accounts made after the date of the cardholder's death shall be considered collection of fraud charges for the purposes of Exhibit A attached hereto.

**3.2 Adversarial Bankruptcy Litigation:** Attorney shall defend issues arising in United States Bankruptcy Courts alleged by bankrupt debtors to exist against CCSI or an affiliate it services. Management of Attorney's duties in that regard shall be performed by the CCSI Legal Department, in conjunction with the Bankruptcy Unit of the CCSI Recovery Operation located in Kansas City, Missouri.

**3.3 Objection Litigation In Bankruptcy:** Attorney shall file and prosecute lawsuits to prevent discharge in bankruptcy of any charges that are considered to be fraudulently incurred on credit card accounts pursuant to Section 523(a) of the Bankruptcy Code. Management of Attorney's duties in that regard shall be performed by the Bankruptcy Unit located at the CCSI site in Kansas City, Missouri.

**3.4 Deceased Accounts:** With respect to debt incurred by a deceased cardholder, Attorney shall attempt to collect the debt from the estate of the decedent or from the spouse of the decedent if a probate proceeding has not been commenced, to the extent permitted by law. Attorney shall, whenever necessary and practicable, initiate summary probate proceedings for the purpose of collecting the debt incurred by a decedent. Management of Attorney's duties in with regard to debt owed by decedent's estate after the date of death shall be performed by the Deceased/Probate Unit located at the CCSI site in Kansas City, Missouri.

**3.5 Counterclaims:** Attorneys retained to defend a counterclaim filed in a collection lawsuit shall be paid the fee set out on Exhibit A. Management of the Attorney's

4

duties in that regard shall be performed by the Legal Department located at the CCSI site in Kansas City, Missouri.

**3.6 Time Barred Debt:** Attorney shall not file a lawsuit to collect debt that is barred by an applicable statute of limitations.

**3.7 Demand Amount:** Lawsuits filed by Attorney to collect debt shall demand recovery of the principal debt (balance owing on date of referral), post-judgment interest permitted by law, as well as court costs and reasonable attorney fees to the extent permitted by law. Attorney shall not, unless specifically authorized in writing, attempt to recover interest or finance charges on accounts between the period of time the account is referred to attorney and when judgment is obtained/filed. In the event Attorney files a lawsuit against a third party other than a customer cardholder to recover fraudulently incurred debt on a credit card account, Attorney shall demand and pursue recovery of punitive damages whenever practical and appropriate.

**3.8 Litigation Expense:** Attorney paid a contingent fee shall endeavor to limit the amount of expense incurred when maintaining litigation. Attorney need not obtain prior approval from CCSI to incur expense for filing and serving pleadings, filing a judgment or initiating proceedings to execute on the judgment by garnishment or other lawful process. However, Attorney shall obtain CCSI's consent prior to incurring any other form of expense. Attorneys paid an hourly fee to defend bankruptcy or counterclaim litigation shall obtain approval from CCSI prior to performing any specific service that will result in a fee of more than Three Thousand Dollars ($3,000).

**3.9 Work Standards:** Attorney shall comply with and abide by any work standards established by CCSI from time to time.

## ARTICLE 4: RIGHTS AND DUTIES OF CCSI

**4.1 Information and Witnesses:** CCSI shall provide Attorney, either directly or through duly appointed vendors, with the information necessary to commence litigation or to perform any other legal services requested. CCSI shall provide Attorneys with any information and/or documentation required for pre-trial discovery or trial. When timely requested by Attorney, CCSI shall provide, at its expense, witnesses for depositions, hearings or trials to prove the merits of a filed lawsuit.

**4.2 Litigation Expenses:** To expedite filing collection litigation and execution of judgments, CCSI authorizes Attorney to pay, on it's behalf, any filing or service fee required to accomplish such purposes. Unless CCSI specifically authorizes Attorney to deduct such fees from gross debt collected, CCSI shall reimburse Attorney for such expenses within forty-five (45) days after receiving a written expense statement. Such expense statements shall be submitted at such intervals as CCSI may require from time to time in its work standards.

**4.3 Contact with Debtor:** CCSI shall not contact the debtor for dunning purposes after the account has been referred to Attorney for collection litigation purposes. However, CCSI shall have the right to assign the account to outside collection agencies for dunning purposes prior to forwarding an account to Attorney for litigation.

5

**4.4 Not Exclusive Agreement:** This Agreement does not grant Attorney an exclusive right perform any legal service on behalf of CCSI or any of its affiliates in the state where Attorney is located. CCSI may recall any account prior to entry of judgment or final appeal and assign the legal work involved to another attorney. Attorney shall expeditiously do all things necessary to carry out such requests.

**4.5 Preparation For Trial:** Attorney acknowledges that a trial on any matter can expose CCSI and its corporate affiliates to judicial and public scrutiny. Attorney agrees to adequately prepare for trial, which shall include, but is not limited to, conducting whatever pre-trial discovery is necessary to fully understand the facts and legal issues involved in the case. CCSI reserves the right to require Attorney to conduct a given type or amount of pre-trial discovery regardless of the fee arrangement involved.

**4.6 Audits:** Attorney shall permit CCSI or its duly assigned vendor to perform audits at Attorney's offices to ensure adequate performance of this Agreement. Such audits may be conducted when deemed necessary by CCSI, without prior notice, during normal business hours. Attorney shall provide CCSI auditors with facilities and documentation necessary to perform the audit and shall fully cooperate with all reasonable requests made by the auditors that relate to the scope of this agreement.

**4.7 Case Management:** Attorney shall be primarily responsible for decisions made regarding legal issues affecting the defense or prosecution of any litigation. However, CCSI nevertheless reserves the right to oversee and review the methods, including computer systems and MIS, used by Attorneys to manage accounts being litigated.

**4.8 Forwarding Accounts:** When the distance between where the Attorney is located and the debtor resides makes it inconvenient for travel, CCSI may permit Attorney to forward accounts or filed lawsuits to attorneys located in the city where the debtor resides or where the lawsuit has been filed. In addition to obtaining CCSI's prior approval, Attorney shall ensure the agreement attached hereto as Exhibit "B" is executed prior to referring an account to another attorney each time consent is obtained from CCSI to transfer an account or lawsuit to another attorney. Attorney shall oversee and be responsible for the work product of the other attorney, and Attorney shall compensate the other attorney in the manner set out in Exhibit "A" attached hereto.

**4.9 Work Standards:** CCSI shall provide Attorney with written work standards setting out the manner in which Attorney shall be required to perform the legal services required by this Agreement. Such work standards may be unilaterally changed by CCSI at any time. Attorney shall be obligated to abide by and adhere to such changed work standards upon receiving a written of such changed work standards.

## ARTICLE 5: COMPENSATION

**5.1 Fee Arrangements:** Attorney shall be compensated for legal services in the manner specified in Exhibit A attached hereto. CCSI shall pay such fee within forty-five (45) days after receiving gross debt collected or the Attorneys billing statement for services rendered.

**5.2 Dormant Judgments:** CCSI may, in its sole discretion, transfer a dormant judgment to another attorney or to a collection agency for collection. In that event, CCSI shall pay Attorney five percent (5%) of net debt collected on the dormant judgment.

**5.3 Sale of Judgments:** CCSI may. in its sole discretion. sell dormant judgments. Attorney shall receive no fee from the proceeds of sale of any dormant judgment.

## ARTICLE 6:  TERM AND TERMINATION

**6.1 Termination:**  Either party may terminate this Agreement for any reason by giving written notice at least sixty (60) days prior to the termination date. Unless otherwise provided herein, either party may immediately terminate this Agreement without notice to the other party due to a material breach the Agreement's terms causing. or likely to cause, financial harm to the non-breaching party.

**6.2 Work In Progress:**  Upon termination for cause or without cause Attorney shall account for all work in progress.  Within thirty (30) calendar days after the termination date: (1) CCSI shall pay all earned attorney fees and advanced litigation expenses owing to Attorney; (2) Attorney shall remit all debt collected to CCSI; (3)  at CCSI's request, Attorney shall transfer files on accounts not reduced to judgment to any other attorney designated by CCSI; and (4)  Attorney shall return all files on unsatisfied judgments.  Except as to dormant judgments,  CCSI shall pay Attorney shall be paid an agreed upon contingent fee when a judgment obtained by Attorney is satisfied in whole or in part. However,  Attorney shall not be paid a contingent fee on partial or complete satisfaction of judgments that are dormant on the termination  date.

## ARTICLE 7: REMITTANCE OF DEBT COLLECTED

**7.1 Collection Litigation:**  Unless otherwise directed by CCSI in its work standards, Attorney shall remit gross debt collected to CCSI.  CCSI shall thereafter calculate the contingent fee owing to Attorney and pay such fee to attorney within thirty (30) days after receipt of the remittance from Attorney.

**7.2 Remittance Statement:** Attorney shall submit to CCSI, either electronically or by hard copy, at such intervals as CCSI may request, a statement showing the following information with respect to gross debt collected and remitted to CCSI: (1) the cardholder's name and account number; (3) identification number/code, if any, used by CCSI; (4) date and amount of debt recovered; and (5) the amount of any attorney fee owed to Attorney.

**7.3 Address:**  Recoveries by Attorney shall the address designated in the work standards.

## ARTICLE 8: SPECIAL NOTICES

**8.1 Bankruptcy:** Upon becoming aware a debtor has filed bankruptcy, Attorney shall provide such information to CCSI at the address set out in the work standards.

**8.2 Counterclaims:**  Upon becoming aware a debtor has filed a counterclaim, Attorney shall provide such information to CCSI at the address set out in the work standards

## ARTICLE 9: CONFIDENTIALITY AND PRIVACY

**9.1 General:**  In performing services, Attorney may need access to information that is confidential and proprietary to CCSI, its customers and corporate affiliates ("Information").  CCSI does hereby limit Attorney's access to Information to

7

situations where they have a need to know the Information for litigation and/or other relevant purposes. Attorney shall use Information only for the purpose of providing services pursuant to this Agreement and shall not accumulate it or make other use of it in any way; Attorney shall not disclose information to any third party unless CCSI has previously consented to such disclosure. Attorney shall treat Information with at least the same degree of care that it treats its own confidential information and shall exercise reasonable precautions to prevent disclosure of Information to unauthorized parties. Attorney shall immediately notify CCSI of any loss or unauthorized disclosure or use of Information that comes to Attorney's attention. For the purposes of this Agreement, notice shall be considered transmitted immediately if sent by telephone or fax. These obligations shall survive the termination of this Agreement.

**9.2 Liability:** Attorney shall be liable to CCSI for any monetary damage directly and proximately caused by a breach of the terms of this Article.

**9.3 Disposition of Information:** Upon the demand of CCSI or termination of the Agreement, Attorney shall comply with the CCSI's instructions regarding the disposition of Information in Attorney's possession or control.

**9.4 Privacy:** Citigroup has adopted Privacy Principles to protect customers against unwarranted dissemination of financial and personal information A copy of the Citigroup Privacy Statement is attached as Exhibit "C". Attorney agrees to abide by the requirements of Exhibit "C" to the same extent as Citigroup and its subsidiary corporations. In addition to any other right to audit Attorney granted to CCSI in this Agreement, CCSI shall have the right to audit Attorney's compliance with the Privacy Principles set out in Exhibit "C" without prior notice during normal business hours.

**9.4 Compliance Audits:** In addition to any other right to audit Attorney granted by this Agreement, CCSI shall have the right to audit Attorney's place of business during normal business hours, without prior notice, for the purpose of ensuring Attorney's compliance with the requirements of this Article.

## ARTICLE 10: GENERAL

**10.1 Status of the Parties:** Attorney is retained as an independent contractor and not as an employee or agent of CCSI or any of its affiliates, and all rights and duties arising out of this Agreement shall be construed accordingly.

**10.2 Entire Agreement:** This Agreement, and any exhibits incorporated herein and/or attached hereto, constitute the entire agreement of the parties. There are no other prior, contemporaneous or collateral agreements between them. And to the extent such prior, contemporaneous agreements are deemed to exist, this Agreement shall supersede them.

**10.3 Waiver:** The failure of either party to enforce a provision of this Agreement shall not prevent that party from subsequently enforcing such part or provision.

**10.4 Independent Construction:** If any part or provision of this Agreement is declared unenforceable by a court of competent jurisdiction, such determination shall be effective only as to the offending part or provision, and all other parts or provisions shall remain in force.

8

**10.5 Modification:** This Agreement may modified by written agreement of both parties.

**10.6 Indemnification:** Attorney agrees to indemnify and hold CCSI harmless from the consequences of any legal action threatened or filed by a third party arising out of Attorney's performance or attempted performance of this Agreement, including, but not limited to, attorney fees paid by CCSI to defend against a threatened or filed legal action.

**10.7 Insurance:** Attorney shall maintain a policy of professional liability (malpractice) insurance with coverage amounts that CCSI may require from time-to-time. Attorney shall provide proof of such insurance coverage to CCSI upon request.

**10.8 Exhibits:** All Exhibits referenced herein and physically attached hereto are incorporated herein as if set forth in full.

**10.9 Compliance With Laws:** Attorney's debt collection activities shall at all times comply with applicable federal, state and local laws and administrative regulations. CCSI may, in its discretion, immediately terminate this Agreement for cause without prior notice if, in its sole discretion, it determines Attorney has violated or likely will violate any such law or administrative regulation.

**10.10 Choice of Law:** The law of the state where Attorney is located shall govern the terms and performance of this Agreement.

**CCSI**

By _Jeanette M. Brown_
(Signature)

_Jeanetta M. Brown_
(Print/Stamp Name) JEANETTE M. BROWN, ASST. VICE PRESIDENT
PERSONNEL #3381209
CITICORP CREDIT SERVICES, INC.
7920 NW 110TH STREET
KANSAS CITY, MO 64153
(816) 505-6779

Date Executed: _06/08/01_


**ATTORNEYS**

By _Robert T. Harris_

_Robert T. Harris_
(Print/Stamp Name)


Date Executed: _5/15/01_

9

**EXHIBIT A:** Attorney is deemed retained to perform any of the following described services for which a fee arrangement has been designated:

**1. Collection litigation:** _____ ▬ of net debt collected

**2. Fraud Litigation:** _____

**3. Counterclaims:** _____

**4. Bankruptcy Litigation:**
   a.  Adversarial Actions: _____

   b.  **Objection Litigation:** Attorney shall be paid a fee of 45% of gross debt collected, less court costs, for all recoveries prior to trial. The fee shall increase to 55% for all debt collected after trial. In addition to those contingent fees, Attorney shall be paid $50 for sending a demand letter to the debtor's attorney, and $100 for attending an examination permitted by section 2004 of the United States Bankruptcy Code. Any expense incurred in filing a lawsuit in bankruptcy court shall be reimbursed to Attorney pursuant to paragraph 4.2 of this Agreement.

**5. Probate Matters:**
   a.  **Demand Letter** _____
   b.  **Initiate Summary probate:** _____

**6. Transfer Fees:** Attorney shall retain five percent (5%) of any contingent fee and pay the balance of the fee over to any attorney retained to provide legal services pursuant to Exhibit "C."

## EXHIBIT B: Referral Agreement

This Agreement is made between _____ _____,
("Associate Attorney" herein) an attorney licensed to practice law in the state of
_____, and _____ ("Primary Attorney"
herein). I consideration of the mutual terms, conditions and promises set out herein, the
parties here to agree as follows:

1. That Primary Attorney has been retained by Citicorp Credit Service, Inc. (CCSI)
   pursuant to the agreement attached hereto to provide legal services with respect to the
   following described account or accounts:

2. The legal services for which he/she was retained consist of the following:

3. For providing such services, Primary Attorney shall pay over to Associate Attorney
   all but five percent (5%) of the contingent fee payable for such services pursuant to
   Exhibit "A" of the attached agreement between the Primary Attorney and CCSI.

4. Associate Attorney agrees to abide by the duties and to perform the obligations
   imposed on Primary Attorney pursuant to the attached Agreement with CCSI. And
   Associate Attorney agrees to indemnify and hold both Primary Attorney and CCSI
   harmless for any expense, including attorney fees, related to threatened or filed
   litigation arising out the performance or attempted performance of this Agreement by
   Associate Attorney.

**Primary Attorney**

_____

(Print/Stamp Name)

Date Executed: _____

**Associate Attorney**

_____

(Print/Stamp Name)

Date Executed: _____

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:** *(Aviso a Acusado)*
NATHAN L BRACKEN

AND DOES 1 THROUGH 5,
INCLUSIVE
**YOU ARE BEING SUED BY PLAINTIFF:**
*(A Ud. le esta demandando)*
CITIBANK SOUTH DAKOTA, N.A.

|  |  |
|---|---|
| You have **30 CALENDAR DAYS** after this summons is served on you to file a typewritten response at this court. | Despues de que le entreguen esta citación judicial usted tiene un plazo de 30 DIAS CALENDARIOS para presentar una respuesta escrita a máquina en esta corte. |
| A letter or phone call will not protect you; your typewritten response must be in proper legal form if you want the court to hear your case. | Una carta o una llamada telefónica no le ofrecerá protección; su respuesta escrita a máquina tiene que cumplir con las formalidades legales apropiadas si usted quiere que la corte escuche su caso. |
| If you do not file your response on time, you may lose the case, and your wages, money and property may be taken without further warning from the court. | Si usted no presenta su respuesta a tiempo, puede perder el caso, y le pueden quitar su salario, su dinero y otras cosas de su propiedad sin aviso adicional por parte de la corte. |
| There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). | Existen otros requisitos legales. Puede que usted quiera llamar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de referencia de abogados o a una oficina de ayuda legal (vea el directorio telefónico). |

The name and address of the court is: *(El nombre y dirección de la corte es)*

**CASE NUMBER** *(Número del Caso)*
**CLJ 429610**

SUPERIOR COURT OF CALIFORNIA, SAN MATEO COUNTY
400 COUNTY CENTER

REDWOOD CITY, CA  94063
CENTRAL BRANCH, LIMITED CIVIL CASE

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es)*

ROBERT T. HARRIS/FLINT C. ZIDE
STATE BAR NUMBERS 37970/160369
1445 HUNTINGTON DRIVE, SUITE 300
SOUTH PASADENA, CA  91030

(626) 799-8444

DATE: *(Fecha)* **MAR 0 3 2003**   PEGGY THOMPSON   Clerk, by *(Actuario)* _____, Deputy *(Delegado)*

[SEAL]

NOTICE TO THE PERSON SERVED: You are served
1. ☒ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (individual)
          ☐ other:
4. ☐ by personal delivery on *(date):*

Form Adopted by Rule 982
Judicial Council of California
982(a)(10) [Rev. January 1, 1984]

*(See reverse for Proof of Service)*
**SUMMONS**

CCP 412.20

1   ROBERT T. HARRIS/FLINT C. ZIDE
    LAW OFFICES OF HARRIS & ZIDE, L.L.P.
2   1445 Huntington Drive, Suite 300
    South Pasadena, CA  91030
3   (626) 799-8444

4   Attorney for Plaintiff
    State Bar Number 37970/160369

5

6

7

**ENDORSED FILED**
**SAN MATEO COUNTY**

MAR 0 3 2003

Clerk of the Superior Court
By  M. YOUNG
    DEPUTY CLERK

8           SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO

9               CENTRAL BRANCH - LIMITED CIVIL

10  CITIBANK SOUTH DAKOTA, N.A.           )   NO. CLJ 429610
                                          )
11            Plaintiff                   )   COMPLAINT FOR MONEY:
                                          )
12  vs.                                   )   BREACH OF CONTRACT; OPEN
                                          )   BOOK ACCOUNT; REASONABLE
13  NATHAN L. BRACKEN                      )   VALUE; ACCOUNT STATED
                                          )
14  AND DOES 1 THROUGH 5,                 )
15  INCLUSIVE                             )
              Defendant(s)                )
16  _____)

17  PRINCIPAL SUED FOR: $3,298.38

18          COMES NOW PLAINTIFF, CITIBANK SOUTH DAKOTA, N.A. and for

19  a cause of action against Defendant(s), and each of them alleges as

20  follows:

21              FIRST CAUSE OF ACTION BY PLAINTIFF

22              CITIBANK AGAINST ALL DEFENDANTS

23              COUNT ONE - BREACH OF CONTRACT

24          1.  That Plaintiff CITIBANK is a National Bank authorized

25  to do business and make loans in the State of California at rates

26  and in the manner set forth in that certain Loan Agreement

27  (hereinafter, "Agreement"), entered into by the parties hereto.

28  ////////////////

    Complaint                    1

2. That the true names and/or capacities, whether individual, corporate, associate or otherwise, of defendants designated herein as DOES 1 through 5, inclusive, are unknown to plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each defendant sued herein as a DOE is in some way legally responsible for the acts alleged herein. Plaintiff will seek leave to amend this complaint when the true names have been ascertained.

3. That plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, each defendant was the agent and/or employee of each of the other defendants and in doing the things herein alleged was acting within the scope of said agency and/or employment. That each defendant has ratified the acts of each of the remaining defendants.

4. That plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, each defendant was married to and living with each of the other defendants and is therefore liable for the debts incurred herein pursuant to the applicable provisions Family Law Code Sections 760, 900, 902, 910, 913, 914, and 916, and as otherwise allowed by law.

5. That one or more of the named defendants, at the commencement of this action or at the time the agreement giving rise to this action was entered into, resided at East Palo Alto, California 94303, which is within the above entitled Judicial District.

6. That prior to the commencement of this action plaintiff and defendants entered into one or more agreements

(hereinafter "the Agreement") whereby defendants obtained a credit account and agreed to repay the amount due.

7.   That subsequent to the establishment of said account, defendant(s), and each of them, requested and accepted loan advances and/or purchases pursuant to the Agreement.  Defendant(s) and each of them, agreed to repay all loan advances and purchases made and accepted, together with interest as set forth in the Agreement.

8.   Each of the Agreements required defendants to make installment payments in the amounts and on the dates indicated in the Agreement.

9.   That plaintiff has duly performed all of the terms, conditions and covenants on its part to be performed under the terms of the Agreement.

10.  That the Agreement provides that if defendant(s), or any of them, fail to fulfill their obligations under the terms of the Agreement, plaintiff may declare the entire balance then outstanding immediately due and payable.

11.  That on or about 8/12/02, defendant(s), and each of them, breached said Agreement by failing to make prescribed installment payments due under the Agreement.

12.  That plaintiff has exercised its rights to declare the entire balance of the account(s) immediately due and payable. There is now unpaid, due, and owing from defendants to plaintiff the principal sum of $3,298.38.

13.  Plaintiff represents that if a security interest does exist pursuant to its agreement with defendant(s), plaintiff has
//////////////

Complaint                          3

1   done nothing to enforce said security interest and upon entry of
2   judgment herein waives said security interest.

3       14.  That this action is not subject to Civil Code Section
4   1801 et seq. or Civil Code Section 2984.4.

5       15.  That the Agreement provides for the payment of
6   reasonable attorney's fees court costs in the even defendants'
7   account is refereed to an attorney for collection.

8       16.  That plaintiff has employed The Law Offices of Robert
9   T. Harris, to represent it in connection with this action.
10  Plaintiff requests that the court award plaintiff a sum as
11  reasonable attorney's fees should plaintiff prevail on the matter
12  herein.

13  <center>COUNT TWO - OPEN BOOK ACCOUNT</center>

14      17.  That plaintiff incorporates therein by reference the
15  allegations of paragraphs 1, 2, 3, 4, 5, 9, 13, 14, 15, and 16 as
16  if each and every allegation therein contained were herein set forth
17  at length.

18      18.  That within 4 years last past defendant(s), and each
19  of them became indebted to plaintiff on an open book account in the
20  sum of $3,298.38, which sum defendants, and each of them, agreed to
21  pay.

22      19.  That although demand was made, defendant(s), and each
23  of them, have paid neither the whole nor any part of said sum.

24      20.  That there is now due, owing and unpaid to plaintiff
25  form defendant(s), and each of them, the sum of $3,298.38.
26  ////////////////
27  ////////////////
28

<u>Complaint</u>        4

COUNT THREE - REASONABLE VALUE

21. That plaintiff incorporates therein by reference the allegations of paragraphs 1, 2, 3, 4, 5, 9, 13, 14, 15, and 16, as if each and every allegation therein contained were herein set forth at length.

22. That within four years last past, defendant(s), and each of them, became indebted to plaintiff in the principal sum of $3,298.38 for the reasonable value of goods and services received by defendant at defendants' request which defendants agreed to repay to plaintiff.

23. That although demand was made, defendant(s), and each of them, have paid neither the whole nor any part of said sum.

24. That there is now due, owing and unpaid to plaintiff form defendant(s), and each of them, the sum of $3,298.38.

COUNT FOUR - ACCOUNT STATED IN WRITING

25. That plaintiff incorporates herein by reference the allegations of paragraphs 1, 2, 3, 4, 5, 9, 13, 14, 15, and 16 as if each and every allegation therein contained were herein set forth at length.

26. That within four years last past an account was stated in writing between plaintiff and defendants, and each of them, wherein defendants, and each of them, owed plaintiff the principal sum of $3,298.38.

27. Defendants have had a reasonable time to object to the account as stated but have not done so, and have thus impliedly agreed that the account was correct as rendered.

////////////////

Complaint                                    5

WHEREFORE, plaintiff prays judgment against defendants, and each of them ,on each and every cause of action and count, as follows:

FIRST CAUSE OF ACTION:

1.   For the principal sum of $3,298.38.

2.   For costs of suit herein.

3.   For reasonable attorney's fees pursuant to agreement or as allowed by law.

4.   For such other and further relief as the court deems just and proper.

DATED: February 14, 2003

LAW OFFICES OF HARRIS & ZIDE, L.L.P.

BY:
ROBERT T. HARRIS/FLINT C. ZIDE
Attorney for Plaintiff