1  Mark E. Ellis - 127159
   June D. Coleman - 191890
2  MURPHY, PEARSON, BRADLEY & FEENEY
   701 University Avenue, Suite 150
3  Sacramento, CA 95825
   Tel: (916) 565-0300
4  Fax: (916) 565-1636

5  Attorneys for Defendants HARRIS & ZIDE, AND FLINT C. ZIDE

6

7                    UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9                          SAN JOSE DIVISION

10

11 NATHAN BRACKEN,                          Civil Action No.: C02 05146 RMW PVT

12      Plaintiff,                          **OPPOSITION TO BRACKEN'S
                                            MOTION TO COMPEL FURTHER
13 v.                                       RESPONSES TO INTERROGATORIES
                                            AND REQUESTS FOR PRODUCTION
14 HARRIS AND ZIDE, L.L.P., ROBERT T.       OF DOCUMENTS**
   HARRIS AND FLINT C. ZIDE,
15                                          Date: January 13, 2004
        Defendants.                         Time: 10:00 a.m.
16                                          Courtroom: 5

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................................1

II. FACTUAL BACKGROUND .....................................................................................................1

III. LEGAL ANALYSIS..................................................................................................................3

    A. Bracken Is Not Entitled To Invade The Attorney-Client Communication Privilege Or The Attorney Work Product Doctrine..................................................................................4

    B. The Number Of Collection Letters Sent On Behalf Of All Of The Law Firm's Clients Are Not Relevant And Such Information Is Overly Burdensome And Oppressive To Calculate Given The Absence Of Relevance. .....................................................................4

    C. Harris & Zide's Response As To The Percentage Of Cases Filed Needs To No Further Detail, And Providing Any Further Detail Would Be Overly Burdensome And Oppressive.............................................................................................................................9

    D. The Only Witness Relevant To The Handling Of Mr. Bracken's Account Is Mr. Harris.........................................................................................................................10

    E. Defendants Have Supplemented Their Responses To Request For Production Of Documents No. 2, And No Further Dispute Should Exist. .............................................11

    F. Defendants Have Supplemented Their Responses To Request For Production Of Documents No. 5, And No Further Dispute Should Exist. .............................................12

    G. The Requested Document Is Protected Under Copyright Law And Equally Available To Plaintiff, Therefore This Court Should Not Compel Production Of The Sole Responsive Documents. ........................................................................................................................12

    H. All Documents Responsive To Request No. 7 Have Been Produced. ..........................12

    I. Bracken's Request For The Production Of All Documents Consulted In Order To Respond To Interrogator5ies Is Overly Broad And Privileged Under The Attorney Work Product Doctrine ........................................................................................................13

    J. Bracken Is Only Entitled To That Portion Of Ht Litigation File That Has Already Been Produced..............................................................................................................................14

IV. CONCLUSION ........................................................................................................................15

OPPOSITION TO BRACKEN'S MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATIRIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

# TABLE OF AUTHORITIES

**CASES**

Boyd v. Wexler
  (7th Cir. 2002) 275 F.3d 64..................................................................................................7

Clarke v. American Commerce Nat'l Bank
  (9th Cir. 1992) 974 F.2d 127................................................................................................4

Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union, AFL-CIO-CLC
  (D.C. Cir. 1997) 103 F.3d 1007...........................................................................................3

Hickman v. Taylor
  (1947) 329 U.S. 495.............................................................................................................5

Holmgren v. State Farm Mut. Auto. Ins. Co.
  (9th Cir. 1992) 976 F.2d 573................................................................................................5

Hopkins Theatre, Inc. v. RKO Radio Pictures, Inc.
  (D.C.N.Y. 1956) 18 F.R.D. 379.........................................................................................13

Maple Drive-In Theatre Corp. v. Radio-Keith-Orpheum Corp.
  (S.D.N.Y. 1956) 153 F.Supp. 240......................................................................................13

Maritime Cinema Serv. Corp. v. Movies En Route, Inc.
  (S.D.N.Y. 1973) 60 F.R.D. 587.........................................................................................13

Nielsen v. Dickerson
  (7th Cir. 2002) 307 F.3d 623................................................................................................7

United States v. National Steel Corp
  (S.D. Texas 1960) 26 F.R.D. 599......................................................................................13

White v. Goodman
  (7th Cir. 2000) 200 F.3d 1016.............................................................................................7

Yancey v. Hooten
  (D. Conn. 1998) 180 F.R.D. 203.......................................................................................15

**STATUTES**

Fair Debt Collection Practices Act
  15 U.S.C. § 1692..................................................................................................................1
  15 U.S.C. § 1692e(5)..........................................................................................................10

Federal Rule of Civil Procedure
   §26(b)(3). ......................................................................................................................5
   §26(b)(2) ..................................................................................................................7, 10
   §33 ...............................................................................................................................5

**OTHER AUTHORITIES**

**California Practice Guide:  Federal Civil Procedure Before Trial**
   (Rutter Group rev. ed. 2003), p. 11-57, ¶ 11:620
   (quoting **Federal Rule of Civil Procedure 26(b)(1)** ......................................................3

OPPOSITION TO BRACKEN'S MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATIRIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

## I. INTRODUCTION

Bracken seeks to compel further responses to Interrogatories 2, 7, 8, 11, 14, and 18, as well as Requests for Production of Documents 1, 2, 5, 6, 7, 8, 14, and 15. Bracken's Motion to Compel should be denied for the following reasons:

(1) The further responses sought by Bracken are privileged as attorney-client communications or attorney work product (Interrogatories 2, 18; Requests for Production of Documents 1, 8, 14, 15);

(2) Further responses are not warranted because the response was complete (Interrogatory 7, 11, 14; Request for Production of Documents 7);

(3) The further responses sought by Bracken are not relevant to the allegations Bracken raised in the complaint and are too overly burdensome and oppressive to provide (Interrogatories 8, 11);

(4) Further responses were provided and there is no longer a dispute to resolve (Requests for Production of Documents 2, 5); and

(5) The Court should not compel the production of copyrighted material that is equally available to plaintiff (Requests for Production of Documents 6).

For these reasons, this Court should deny Bracken's Motion to Compel.

## II. FACTUAL BACKGROUND

Through this lawsuit, Bracken seeks statutory damages and attorneys' fees for violation of the Fair Debt Collection Practices Act, **15 U.S.C. § 1692** *et seq.* (First Amended Complaint, **Bracken's Exhibit A**, pp. 10:6-13, 12:12-19, 14:10-17, 15:18-16:3.) There is no claim for actual damages, and indeed, there cannot be. (See *id.*) Although Bracken's First Amended Complaint contains class allegations in conjunction with an individual claim, Bracken has not certified this matter as a class action since it was filed almost a year ago. (See First Amended Complaint, **Bracken's Exhibit A**, ¶¶ 44-50, 64, 80, 88; Coleman Decl., ¶ 2.) Specifically, Bracken states that he will only seek class certification "[i]f the facts are discovered to be appropriate." (First Amended Complaint, **Bracken's Exhibit A**, ¶ 50.)

Bracken claims that a letter sent to Mr. Bracken by Harris & Zide violated the Fair Debt Collection Practices Act because of its wording, because it was printed on Harris & Zide letterhead, and because Mr. Bracken was not sued in the two months before he decided to file his lawsuit against Harris & Zide. (First Amended Complaint, **Bracken Exhibit A**, ¶¶ 59, 61, 74, 89.)

By way of background, Mr. Bracken admits in his complaint that defendants Mr. Harris and Mr. Zide are attorneys. (First Amended Complaint, **Bracken's Exhibit A**, ¶¶ 4-5.) Mr. Bracken also admits that Harris & Zide is a law firm. (*Id.* at ¶ 6.) Harris & Zide, and its attorneys, assist their clients by prosecuting collection lawsuits against debtors. For instance, Harris & Zide filed a lawsuit against Mr. Bracken after he did not respond to the notice mandated by the Fair Debt Collection Practices Act. (Bracken Lawsuit, **Exhibit 1**.)

Bracken served his first discovery request on March 28, 2003, by mail. (**Bracken Exhibit C**.) Defendants served their responses on April 30, 2003. (<u>See, e.g.</u>, **Bracken Exhibit D** (Harris & Zide, LLP response).) A month later, plaintiff's counsel faxed a letter to defense counsel taking issue with some of defendants' responses. (**Bracken Exhibit E**.) This correspondence was put to the side as the parties conducted an early neutral evaluation session the next day, May 28, 2003. There seemed little use in responding to the correspondence after May 28, 2003, because defendants believed that the parties had reached a settlement. (Coleman Decl., ¶ 3.) It was not clear to defendants that the parties had not reached a settlement until late in July 2003. (*Id.*) After it became apparent that the parties had not reached a settlement, the parties waited for a hearing on defendants' motion to dismiss, which had been fully briefed in April, and which was eventually heard on October 17, 2003. (*Id.*) The parties are still awaiting a ruling on the motion to dismiss. (*Id.*) Until recently, in November 2003 when the parties discussed depositions, it appeared as though the parties were awaiting a ruling before moving forward with this case. (*Id.*) However, once plaintiff raised this issue again on November 20, 2003, defense counsel responded with further information, suggestions as to how to address various discovery issues, and offers to supplement responses.[1] (**Bracken's Exhibit F**.) Although delayed by the holidays and vacation plans, defendants have supplemented their discovery responses, as promised,

1  and produced previously redacted portions of the Harris & Zide **Citibank v. Bracken** file.
2  (Supplemental Responses, **Exhibit 2**.)

3  The parties' counsel then met and conferred over the telephone. (Coleman Decl., ¶ 5.) At that
4  time, plaintiff's counsel did not seek to discuss issues raised in defense counsel's written response, but
5  rather sought to know how many responses defendants would supplement and sought to discuss the
6  scheduling of the motion to compel. (*Id.*) For all intents and purposes, plaintiff's counsel has not
7  addressed the issues raised in the December 5, 2003 letter from defense counsel. (*Id.*)

8  Plaintiff's counsel sought to have the hearing on the motion to compel on January 13, 2004.
9  (*Id.* at ¶ 6.) However, defense counsel was unavailable to file an opposition brief on December 23,
10 2003, as provided for in the local rules, because of a pre-planned vacation out of the state, and objected
11 to a January 13, 2004 hearing on that basis. (*Id.*) Plaintiff's counsel indicated he would not object to
12 defendants filing an opposition on December 30, 2003, to accommodate defense counsel's
13 unavailability. (*Id.*) Plaintiff's counsel also stated that plaintiff would file a reply brief, if necessary,
14 by January 5, 2004. (*Id.*)

### III.   LEGAL ANALYSIS

16 "Each party has the right to discover nonprivileged information 'relevant to the claim or
17 defense of any party' ... ." (2 Schwarzer, William W., J., **California Practice Guide: Federal Civil**
18 **Procedure Before Trial** (Rutter Group rev. ed. 2003), p. 11-57, ¶ 11:620 (quoting **Federal Rule of**
19 **Civil Procedure 26(b)(1)**).) "[T]he standard of relevancy is not so liberal as to allow a party to ...
20 explore matter which does not presently appear germane on the theory that it might conceivably
21 become so." (**Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union, AFL-CIO-CLC**
22 (D.C. Cir. 1997) 103 F.3d 1007, 1012-13 (cited with approval in Schwarzer's **Federal Civil**
23 **Procedure Before Trial**, p. 11-58; ¶ 11:626).) "Discovery of privileged matters goes beyond the
24 legitimate scope of information to be obtained during discovery even if relevant to a party's claims or
25 defenses." (2 Schwarzer, *supra*, p. 11-59, ¶ 11:635 (citing Rule 26).)

---

[1] Defense counsel's response was delayed due to the Thanksgiving holiday and other commitments that required defense counsel to be out of the office.

- 3 -

A. **Bracken Is Not Entitled to Invade the Attorney-Client Communication Privilege or the Attorney Work Product Doctrine.**

Bracken propounded the following discovery requests seeking information that was conveyed to Harris & Zide from its client, Citibank, or seeking documents that contain communications between Harris & Zide and its client, Citibank:

**INTERROGATORY NO 2:**

Identify all documents related to Plaintiff's alleged debts which were in each of the Defendants' physical possession when each of the letters bearing a letterhead of the Harris & Zide, LLC (including without limitation the letter attached as Exhibit A to the Complaint) were transmitted to the Plaintiff about the Plaintiff's alleged debts. In so doing, specify the date the document was received, the nature of the document, when and by whom the document was reviewed, and the letter(s) to which the document relates.

**INTERROGATORY NO 18:**

Identify all documents transmitted to Defendants regarding Plaintiff's alleged debts to Citibank South Dakota, N.A. on or before the date Defendants first communicated with the Plaintiff.

**REQUEST FOR PRODUCTION NO. 1:**

All documents transmitted to Defendants regarding Plaintiff's alleged debts to Citibank South Dakota, N.A. on or before the date Defendants first communicated with the Plaintiff.

In response to these discovery requests, defendants objected on the basis of the attorney-client communication privilege and the attorney work product doctrine. (See Harris & Zide's Response to Bracken's Interrogatories, **Bracken Exhibit D**, pp. 2:25-3:5; 11:9-14; see also Harris & Zide's Supplemental Response to Bracken's Request for Production of Documents, **Exhibit 2**, p. 2:7-11.)

"Under the attorney-client privilege, confidential communications made by a client to an attorney to obtain legal services are protected from disclosure." (**Clarke v. American Commerce Nat'l Bank** (9th Cir. 1992) 974 F.2d 127, 129.) Each of these discovery requests seeks the information that was conveyed to Harris & Zide from its client, Citibank. It is undisputed that Harris & Zide is a law firm. (First Amended Complaint, **Exhibit A**, ¶ 6.) It is also undisputed that Harris & Zide represent Citibank, as evidenced by the complaint that Harris & Zide filed against Mr. Bracken on behalf of Citibank. (Bracken Lawsuit, **Exhibit 1**; Zide Decl., ¶ 3.) Finally, it is undisputed that Citibank consulted Harris & Zide for the purpose of filing a lawsuit against Mr. Bracken on behalf of

- 4 -

Harris & Zide, as evidenced by the Complaint against Bracken. (Zide Decl., ¶ 3; <u>see also</u> Bracken Lawsuit, **Exhibit 1**.) This is the prima facie example of privileged attorney-client communications.

Moreover, the requested information also invades the attorney work product doctrine. "The 'work product' doctrine protects trial preparation materials that reveal an attorney's strategy, intended lines of proof, evaluation of strengths and weaknesses, and inferences drawn from interviews." (2 Schwarzer, *supra*, p. 11-7, ¶ 11:825 (citing to **Rule 26(b)(3)** and <u>**Hickman v. Taylor**</u> (1947) 329 U.S. 495, 511).) Work product protection applies to "documents and tangible things prepared in anticipation of litigation or for trial" by or on behalf of a party. (**Fed Rule Civ. Proc. 26(b)(3)**.) "Work product protection is designed to preserve the privacy of attorneys' thought processes ... ." (2 Schwarzer, *supra*, p. 11-78, ¶ 11:827 (citing to <u>**Hickman v. Taylor**</u> (1947) 329 U.S. 495, 511 and <u>**Holmgren v. State Farm Mut. Auto. Ins. Co.**</u> (9th Cir. 1992) 976 F.2d 573, 576).) "Work product remains protected even after termination of the litigation for which it was prepared." (2 Schwarzer, *supra*, p. 11-78, ¶ 11:828.)

In each of these discovery requests, Bracken seeks any documents transmitted to Harris & Zide by their client for the express purpose of prosecuting litigation against Mr. Bracken or, as an end run around producing the documents, the information contained in the documents. This information and these documents will provide a road map of what information Harris & Zide used for purposes of developing the case against Mr. Bracken on behalf of Citibank. (Zide Decl., ¶ 4.) Such documents, and the information they contain, are the quintessential attorney work product that must be protected to ensure that an attorney's thought processes are protected.

Although the other objections are justifiable,[2] the Court need only address the attorney client communication privilege and the attorney work product doctrine to determine that these discovery requests are rightfully objectionable.

---

[2] Mr. Bracken takes great pains to emphasize that defendants objected to interrogatories on the basis that many of Bracken's interrogatories were compound. This objection is well founded given the limitations on the number of interrogatories that can be propounded (**Fed. R. Civ. Proc. 33.**) and the way in which each interrogatory actually consists of multiple interrogatories. Defendants did not want to face an argument that they had waived this objection as to the multiple interrogatories framed in each interrogatory when defendant objects to the number of interrogatories plaintiff has propounded. By way of example, in Interrogatory 2, Bracken's single interrogatory is actually the following numerous interrogatories: (1) What documents did Harris & Zide have in its possession prior to the mailing of the Harris

- 5 -

**B.    The Number of Collection Letters Sent on Behalf of All of the Law Firm's Clients Are Not Relevant and Such Information Is Overly Burdensome and Oppressive to Calculate Given the Absence of Relevance**

Bracken sought the number of "collection letters" that were sent by Harris & Zide in 2001 and 2002 in the following interrogatories:

**INTERROGATORY NO 7:**

Set forth the number of collection letters sent on Harris & Zide, LLC letterhead during 2001 or provide your best estimate based on your records to the nearest 100.

**INTERROGATORY NO 8:**

Set forth the number of collection letters sent on Harris & Zide, LLC letterhead during 2002, or provide your best estimate based on your records to the nearest 100.

In response to Interrogatory No. 7, defendants responded that "no letters were sent by Harris & Zide." (Harris & Zide Response to Bracken's Interrogatories, **Bracken Exhibit D**, p. 5:12-13; see also Zide Decl, ¶ 5.) While plaintiff may not like this response, plaintiff cannot compel a different response.

In response to Interrogatory No. 8, defendants responded with their best estimate of the number of letters which Harris & Zide sent in 2002 similar to the letter at issue in this action: 2,800 letters. (Harris & Zide Response to Bracken's Interrogatories, **Bracken Exhibit D**, p. 5:12-13.) Defendants responded, notwithstanding their objections, and without waiving their objections, that the term "collection letter" was vague and ambiguous, and that the number of other "collection letters," whatever that means, sent by Harris & Zide was irrelevant and not likely to lead to the discovery of admissible evidence.

First, "collection letter" is vague and ambiguous, and can have many different meanings. Does plaintiff mean a form collection letter? Does plaintiff mean a individually prepared letter by a legal assistant or secretary providing information regarding account balance, and closing with a request for

---

& Zide collection letter to Mr. Bracken? (2) What documents did Mr. Harris have in his possession prior to the mailing of the Harris & Zide collection letter to Mr. Bracken? (3) What documents did Mr. Zide have in his possession prior to the mailing of the Harris & Zide collection letter to Mr. Bracken? (4) When did Harris & Zide receive the document(s)? (5) When did Mr. Harris receive the document(s)? (6) When did Mr. Zide receive the document(s)? (6) Who reviewed each document received? (7) When was each document reviewed? (8) And did each document "relate" to the Harris & Zide collection letter?

- 6 -

OPPOSITION TO BRACKEN'S MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF DOCUMENTS

payment? Does plaintiff mean a letter providing validation of debt information? Does plaintiff mean correspondence by plaintiff's counsel to an in pro per debtor regarding litigation, such as a notice of motion for summary judgment, or a request for default judgment? This was addressed in defense counsel's December 5, 2003 meet and confer letter, but was never clarified. (See December 5, 2003 Letter from Coleman, **Bracken Exhibit F**, p. 4.)

More importantly, the pleadings provide the scope of discovery, and this request, as expansively interpreted by plaintiff, is outside the scope of the pleadings given the present posture of the case. (See 2 Schwarzer, *supra*, pp. 11-57, 11:621.) The allegation that Bracken claims is pertinent to this request remains whether Harris & Zide was misleading when it put its own name on its own letter to Mr. Bracken. Even if the Court holds Harris & Zide to the standards used by courts in different circuits against dissimilar collection "law firms" who are flat raters[3] that do not litigate cases (**Nielsen v. Dickerson** (7th Cir. 2002) 307 F.3d 623; **Boyd v. Wexler** (7th Cir. 2002) 275 F.3d 64), the issue remains whether Mr. Harris sufficiently reviewed Mr. Bracken's account. The extent to which Mr. Harris, or Mr. Zide, reviewed any other account before prosecuting litigation against another debtor is simply immaterial to this individual action, as currently postured. Therefore, the number of letters sent by Harris & Zide to California debtors is irrelevant and not likely to lead to the discovery of admissible evidence.

However, and perhaps more importantly, calculating such information is overly burdensome and oppressive in that "the burden or expense of the proposed discovery outweighs its likely benefit." (See **Fed. R. Civ. Proc. 26(b)(2)**.) The only method of calculating how many "collection letters" were sent, whatever that means, would be an inspection of each litigation file. (Zide Decl., ¶ 7.) Harris & Zide has no other method by which it can calculate such a number. (*Id.*) And such an inspection would be time consuming and costly.

---

[3] "Flat-raters" are debt collectors, including collection attorneys, who supply form letters on their letterhead for use by another party, creating the false impression that the collector or attorney is participating in the collection of a debt. Flat-raters essentially sell their letterhead to another for the other's use to assist in collecting debts, and have no other involvement in the collection activity. (**White v. Goodman** (7th Cir. 2000) 200 F.3d 1016,1018.)

- 7 -

By way of example, Harris & Zide provided in its discovery response that approximately 2,800 letters similar to the letter at issue in Bracken's case were sent to other California debtors. (Harris & Zide Response to Bracken's Interrogatories, **Bracken Exhibit D**, No. 8, p. 5:22-25; Zide Decl., ¶ 6.) This was derived by estimating the number of cases that were referred by Citibank to Harris & Zide. (Zide Decl., ¶ 6.)

This procedure would not reasonably calculate the number of "collection letters," whatever that means, that were mailed by Harris & Zide to California debtors in 2002. To determine how many "collection letters" were sent to these 2,800 California residents, an individual review of each litigation file would have to be conducted. (Zide Decl., ¶ 7.) A summary of mailings for each litigation file is contained within the Account Detail Report, intermingled with summaries of all telephone conversations, and notes regarding preparation for and litigation activities. (*Id.*) Using the Account Detail Report for Mr. Bracken, a review would consist of reading all of the entries in the multi-page Account Detail Report to determine how many letters were sent and the substance of the letters. (*Id.*) With respect to Mr. Bracken, Harris & Zide sent Mr. Bracken 2 letters. (Account Detail Report, included in **Exhibit 2** (August 15, 2002, and August 26, 2002).) Imagine how voluminous an Account Detail Report could be for a debtor who agreed to numerous payment schedules, but then reneged on these promises after one payment, two payments, or no payments.

Assume that it takes only 5 minutes to obtain an Account Detail Report and read it to determine how many letters are recorded in the Account Detail Report ad the substance of the letters to determine if they are "collection letters." Of course this estimate is probably too conservative. (Zide Decl., ¶ 7.) Basing this calculation only on those accounts that received letters similar to Mr. Bracken's letter, the only letter at issue in the First Amended Complaint, the time it would take to review the litigation files of these 2,800 debtors would be 5 minutes times 2,800 litigation files, or 14,000 minutes, or over 233 hours, the equivalent of employing one person full time for approximately six weeks. And if the estimate of review time is greater than 5 minutes, say 10 minutes, it would equate to 3 months of work.

And if the Court were to expand the scope of this inquiry to include other defendants who received "collection letters" that were not similar to Mr. Bracken's letter, the time would increase

exponentially. Harris & Zide prosecuted 7,000 actions during 2002. (Zide Decl., ¶ 2.) Using that figure, at 5 minutes to review each file, it would take 35,000 minutes, or over 583 hours, or employing someone full time over 14 ½ weeks. And if the estimate of review time is greater than 5 minutes, say 10 minutes, it would equate to approximately 7 months of work.

Given the impossibility of providing such information as to all of Harris & Zide's litigation files without an individual review of each file, the burden of providing this information outweighs its complete lack of relevancy. Clearly, the Court should deny this request for further responses.

**C.    Harris & Zide's Response as to the Percentage of Cases Filed Needs No Further Detail, and Providing Any Further Detail would be Overly Burdensome and Oppressive.**

Bracken seeks to discover what percentage of California debtors Harris & Zide files suit against as compared to the number of California debtors who received a letter similar to the letter at issue in Bracken's case. (Interrogatory No. 11, **Bracken's Exhibit C**, p. 4.) Harris & Zide's response is that the law firm files suit against 100% of the California debtors who received a letter similar to the letter at issue unless Harris & Zide discover that it would be frivolous or illegal to file a lawsuit. (Harris & Zide's Response to Interrogatory No. 11, **Bracken's Exhibit D**, p. 7:10-16.) Harris & Zide identified the reasons that filing a lawsuit would be frivolous or illegal:

(1)  Harris & Zide's client discharged Harris & Zide from representing it as to the specific litigation matter (which would make the filing of a lawsuit by Harris & Zide after that event illegal);

(2)  The debtor's correspondence is returned as undeliverable and further efforts to locate the debtor are to no avail (which would make the filing of a lawsuit frivolous because the summons and complaint could not be served); or

(3)  Harris & Zide learn after sending the initial letter similar to the one received by Bracken that the debtor has filed bankruptcy (which would be a violation of the automatic bankruptcy stay). (*Id.*)

This response answers Mr. Bracken's interrogatory unequivocally. It appears that Mr. Bracken is just unhappy with this response, and on that basis seeks to morph Interrogatory 8 into a collection of additional interrogatories. Of course, that is no basis to compel further responses.

- 9 -

Notably, Harris & Zide's reasons for not filing suit are not events that Harris & Zide have any control over, or any option when it comes to filing lawsuits. After all, the reasons do not include such things as the balance is too low, or the debtor's location for purposes of litigation is inconvenient to Harris & Zide, both of which Harris & Zide would have known prior to the sending of the initial letter received by Bracken. Indeed, if these latter reasons were Harris & Zide's actual reasons for not filing a lawsuit, that would provide plaintiff with some argument that Harris & Zide was threatening legal action when it had no intent to take such action, in violation of the Fair Debt Collection Practices Act, **15 U.S.C. § 1692e(5)**. However, Harris & Zide's reasons occur after the sending of the letter, and thus after an intent to file a lawsuit was formed. Moreover, Harris & Zide's reasons are also not discretionary, based on inconvenience or profitability. Therefore, information regarding what percentage of cases were not filed because of bankruptcy, termination of representation, and failure to locate the debtor is not relevant to the claims asserted by Bracken, and thus not discoverable.

Additionally, these numbers are not calculated by Harris & Zide as a part of its regular business operations, but would need to be developed after a review of each litigation file. (Zide Decl., ¶ 8.) As described above, such a review could take a minimum of 6 weeks, or 12 weeks, or more. Even if the Court was inclined to morph Bracken's interrogatory into additional interrogatories, responding to these new interrogatories would be overly burdensome and oppressive such that "the burden or expense of the proposed discovery outweighs its likely benefit." (See **Fed. R. Civ. Proc. 26(b)(2)**.) On this basis, this Court should deny this request to compel further responses.

**D.    The Only Witness Relevant to the Handling of Mr. Bracken's Account Is Mr. Harris.**

Mr. Bracken seeks the job descriptions of each employee, how many employees fill each type of position, and the name, address and telephone number of each employee employed by Harris & Zide. (Interrogatory No. 14, **Bracken's Exhibit C**, p. 5.) As noted in Harris & Zide's objections, such an overly broad request seeks information that is not likely to lead to the discovery of admissible evidence related to Bracken's allegations. (Harris & Zide's Responses to Interrogatories, **Bracken Exhibit D**, No. 14, p. 9:16-27.) Without waiving these objections, Harris & Zide responds to the non-

objectionable portion of the interrogatory, stating that Mr. Harris, an attorney, was the only person involved with Mr. Bracken's account prior to the mailing of the August 15, 2002 letter.

As noted above, discovery relevant to Bracken's claims is permissible. In this regard, Bracken claims that the mailing of the initial letter to Bracken violated the FDCPA because the letter did not comply with the FDCPA validation notice, the letter improperly threatened to sue Mr. Bracken, and the letter was sent on Harris & Zide letterhead. (First Amended Complaint, **Bracken Exhibit A**, ¶¶ 59, 61, 74, 89.) Although defendants dispute the application of the legal standard upon which plaintiff's position is founded, based on these allegations and using plaintiff's own legal standard, the relevant issues, as argued by Mr. Bracken, involve (1) the wording of the letter, including the design of the letterhead, (2) whether an attorney participated in a review of Mr. Bracken's litigation file prior to the sending of the letter to Mr. Bracken, and (3) whether Harris & Zide intended to sue Mr. Bracken. Harris & Zide's response to Interrogatory 3 states that Mr. Harris was responsible for directing that the letter be sent to Mr. Bracken and reviewing the letter sent to Mr. Bracken. (Harris & Zide Response to Interrogatories, **Bracken's Exhibit D**, No. 3, p. 3:16-17.) Harris & Zide's response to Interrogatory No. 14 states that only Mr. Harris had any involvement with the. Bracken litigation file when the file was reviewed and a decision was made to represent Citibank in this litigation matter. (***Id.***, No. 14, p. 9:24-27.) There are no other relevant witnesses.

E. **Defendants Have Supplemented Their Responses to Request for Production of Documents No. 2, and No Further Dispute Should Exist.**

It is clear from defendants' first response to this request that defendants misinterpreted this Request. Based on the parties' meet and confer efforts, defendants have supplemented their responses to address plaintiff's concerns. (Harris & Zide's Supplemental Response to Bracken's Requests for Production of Documents, **Exhibit 2**, p. 2:16-27.) As noted in the response, Harris & Zide only sent Mr. Bracken two letters prior to the filing of Bracken's Lawsuit against defendants: an August 15, 2003 letter, which is attached to the Complaint, and an August 26, 2003 letter that plaintiff has produced to defendants in response to discovery. It is overly burdensome to re-produce these documents when Mr. Bracken already has them, especially after the documents have been specifically identified. Therefore, it would appear that there is no dispute as to the response to this interrogatory.

- 11 -

**F.  Defendants Have Supplemented Their Responses to Request for Production of Documents No. 5, and No Further Dispute Should Exist.**

Based on the parties' meet and confer efforts, defendants have supplemented their responses to address plaintiff's concerns, including the production of documents. (Harris & Zide's Supplemental Response to Bracken's Requests for Production of Documents, **Exhibit 2**, p. 3:5-10; Supplemental Production of Account Detail Report, included in **Exhibit 2**.) The response indicates that documents shall be produced and the Account Detail Report now reflects all telephone communications between Harris & Zide and Mr. Bracken. (*Id.*) No further dispute should exist regarding this response.

**G.  The Requested Document Is Protected Under Copyright Law and Equally Available to Plaintiff, Therefore This Court Should Not Compel Production of the Sole Responsive Document.**

Bracken seeks for defendants to produce "[a]ll manuals, procedures, and protocols used by Defendants to comply with the Fair Debt Collection Practices Act." (Request for Production of Documents, **Bracken Exhibit C**, No. 6, p. 7.) Defendants' response was to identify the sole responsive document, and indicate that it was a copyright protected document that was equally available from the American Collector's Association for a nominal fee. (Harris & Zide's Response to Request for Production of Documents, **Exhibit 3**, Request No. 6, p. 4:7-18.) Bracken has failed to address this issue at all, focusing rather on relevancy. This manual has approximately 550 pages and is probably cheaper to purchase, than it is to copy and deliver. In light of these circumstances, this Court should deny Bracken's request to compel production of this copyrighted manual.

**H.  All Documents Responsive to Request No. 7 Have Been Produced.**

Bracken seeks all documents identified in response to interrogatories. (Bracken's Request for Production of Documents, **Bracken's Exhibit C**, Request No. 7, p. 7.) The objections raised in response to **Request for Production of Documents No. 7** are necessary in that Bracken refers to interrogatory responses which assert objections. However, based on a review of Harris & Zide's Interrogatory Responses, there are only two documents that are identified: the August 15, 2002 Letter, identified in response to Interrogatory No. 2, and attached to Bracken's Complaint as an Exhibit, and the Citibank contract, identified in response to Interrogatory No. 10, and attached as Exhibit 3 to the

- 12 -

OPPOSITION TO BRACKEN'S MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Index of Exhibits submitted with defendants' Motion to Dismiss. Since Bracken has these two documents attached to pleadings in this case, it would be unduly burdensome to re-produce the documents. Therefore, defendants have responded properly to this Request for Production of Documents, and this Court must deny Bracken's request to compel further production of documents.

I.  **Bracken's Request for the Production of All Documents Consulted in Order to Respond to Interrogatories is Overly Broad and Privileged Under the Attorney Work Product Doctrine.**

Bracken requests that defendants produce all documents that were consulted for purposes of responding to interrogatories. (Request for Production of Documents, **Bracken Exhibit C**, No. 8, p. 7.) Defendants responded that such information was protected under the attorney work product doctrine and not likely to lead to the discovery of admissible evidence. (Harris & Zide's Response to Bracken's Request for Production of Documents, **Exhibit 3**, No. 8, p. 5:7-12.)

Such a question is akin to asking a deponent what documents were consulted when preparing for a deposition. The selection of documents reflects an attorney's thoughts and impressions about the case and the discovery responses. Indeed, defendants would have necessarily reviewed documents that are privileged given the interrogatories that seek attorney-client communications and attorney work product. Defendants may have also reviewed documents that are irrelevant to the allegations Bracken raises in this case, to ensure that they did not contain information that would be relevant to a discovery request.

Moreover, courts who have addressed this request have found that this request is overly broad and unrelated to the claims and defenses asserted by the parties. (See **Maritime Cinema Serv. Corp. v. Movies En Route, Inc.** (S.D.N.Y. 1973) 60 F.R.D. 587, 591-92 ; see also **Maple Drive-In Theatre Corp. v. Radio-Keith-Orpheum Corp.** (S.D.N.Y. 1956) 153 F.Supp. 240, 244 (addressing same concept with respect to persons who have prepared interrogatories); **United States v. National Steel Corp** (S.D. Texas 1960) 26 F.R.D. 599, 600 (same); **Hopkins Theatre, Inc. v. RKO Radio Pictures, Inc.** (D.C.N.Y. 1956) 18 F.R.D. 379, 383 (same).)

For all of these reasons, this Court should deny Bracken's request for the production of these documents.

**J.  Bracken Is Only Entitled to That Portion of the Litigation File That Has Already Been Produced.**

Bracken seeks to have defendants produce the entire litigation file, including all "collection records," whatever that is, plus all other documents relating to Bracken's debt to Citibank. (Request for Production of Documents, **Bracken Exhibit C**, Nos. 14, 15, p. 7.) Defendants have responded that such information is not likely to lead to the discovery of admissible evidence as framed by the Complaint, and that the request seeks privileged attorney-client communications. (Harris & Zide's Response to Request for Production of Documents, **Exhibit 3**, Nos. 14, 15, pp. 7:26-8:6, 8:11-19.) Moreover, the request is vague and ambiguous. (*Id.*) Now that plaintiff has interpreted his request broadly to include internal notes as to activity in preparation for litigation, it is clear that this request also incorporates attorney work product.

The analysis must start with relevancy as framed by the First Amended Complaint, and the First Amended Complaint is directed toward the intent of Harris & Zide as of August 15, 2002, the actions of Harris & Zide prior to the mailing of Bracken's August 15, 2002 letter, and the language of the August 12, 2002 letter. (First Amended Complaint, **Bracken Exhibit A**, ¶¶ 59, 61, 74, 89.) The Account Detail Report is the only responsive document, and information as of August 15, 2002 has been produced. (Supplemental Responses, **Exhibit 2**, Produced Account Detail Report.) Nothing beyond the August 15, 2002 date is relevant to the issues raised in the First Amended Complaint.

However, further portions of this document have also been produced. (*Id.*) The only potions of this Report that are redacted represent attorney-client communications and/or attorney work product, as discussed above in relation to Interrogatories 1 and 2. (Zide Decl., ¶ 4.) This document was identified on the privilege log as containing privileged attorney client communications and attorney work product. (Privilege Log, **Bracken's Exhibit I**.) There is no basis to produce these privileged entries.

Plaintiff's citation to the **Yancey** case is inapplicable. The **Yancey** Court based its ruling to deny the asserted privileges on two facts: (1) "[T]he defendant does not provide, nor can the court find, any reason to invoke the attorney-client privilege." (2) And, "[w]ith respect to the defendant's claimed attorney work product immunity, due to the great number of accounts referred to collection agencies

- 14 -

and the few which are actually litigated, it is not reasonable to assume that the defendants prepared the collection record in anticipation of imminent litigation." (**Yancey v. Hooten** (D. Conn. 1998) 180 F.R.D. 203, 213.) Not only does the defendants' discovery responses identify a high percentage of litigation matters (Harris & Zide's Responses to Bracken's Interrogatories, **Bracken Exhibit D**, No. 11, p. 7:5-16), but defendants prosecuted litigation against Mr. Bracken, himself. (Bracken Lawsuit, **Exhibit 1**.) Moreover, plaintiff's own pleadings and the Bracken lawsuit establish that an attorney-client relationship existed between Citibank and Harris & Zide. (See First Amended Complaint, **Bracken Exhibit A**, ¶¶ 4-6; Bracken Lawsuit, **Exhibit 1**; Zide Decl., ¶ 3.)

**Yancey** fails to provide any sound reasoning to support its conclusion, and thus this district court opinion from the East Coast fails to provide persuasive authority.

For these reasons, the Court must deny Bracken's request for further discovery.

## IV.  CONCLUSION

Defendants respectfully request that this Court deny Bracken's Motion to Compel. Further responses that addressed Bracken's concerns have mooted many of the issues raised in Bracken's Motion, as the parties discussed on December 5, 2003. (Requests for Production of Documents 2, 5.) Responses were complete as to several of the discovery requests. (Interrogatory 7, 11, 14; Request for Production of Documents 7.) Other further responses sought by Bracken are privileged and non-discoverable. (Interrogatories 2, 18; Requests for Production of Documents 1, 8, 14, 15.) And others lack any relevance to the allegations raised in the First Amended Complaint and are simply too overly burdensome and oppressive in comparison to their lack of relevance. (Interrogatories 8, 11.) For all of these reasons, this Court should deny Bracken's Motion to Compel.

Dated: December 30, 2003

MURPHY, PEARSON, BRADLEY & FEENEY

By /s_____
 June D. Coleman
 Attorneys for Defendants
 HARRIS & ZIDE, L.L.P., FLINT C. ZIDE

JDC.10201228