Mark E. Ellis - 127159
June D. Coleman - 191890
MURPHY, PEARSON, BRADLEY & FEENEY
701 University Avenue, Suite 150
Sacramento, CA 95825
Tel: (916) 565-0300
Fax: (916) 565-1636

Attorneys for Defendants
HARRIS & ZIDE, L.L.P. and FLINT C. ZIDE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NATHAN BRACKEN,<br><br>　　　　Plaintiff,<br><br>v.<br><br>HARRIS AND ZIDE, L.L.P., ROBERT T. HARRIS, FLINT C. ZIDE, AND FRANK TIRRE,<br><br>　　　　Defendants. | Case No.: C02 05146 RMW PVT<br><br>**DECLARATION OF FLINT C. ZIDE IN SUPPORT OF OPPOSITION TO MOTION TO COMPEL**<br><br>Date:　January 13, 2004<br>Time:　10:00 a.m.<br>Courtroom:　5 |

I, Flint C. Zide, declare that:

　　1.　I am an attorney duly licensed to practice in all courts of the State of California, and was a partner with the law firm of Harris & Zide, LLP. I am also a defendant in the lawsuit captioned above. I have personal knowledge of the information set forth herein below, unless noted as based on information and belief, all of which is true and correct of my own personal knowledge, and if called upon to testify, I could and would competently testify thereto.

　　2.　The Harris & Zide law firm focused primarily on collection litigation. The Harris & Zide law firm filed approximately 7,000 collection lawsuits in 2002, at a rate of approximately 600 collection lawsuits per month.

　　3.　On August 14, 2002, the law firm was retained by Citicorp to prosecute litigation against Mr. Bracken regarding an outstanding credit card debt he owed to Citicorp. Although Mr.

- 1 -

DECLARATION OF FLINT C. ZIDE IN SUPPORT OF OPPOSITION TO MOTION TO COMPEL

Bracken claims that Citicorp's contract does not authorize Harris & Zide to prosecute litigation against Mr. Bracken in paragraph 60(3) of the First Amended Complaint, Citicorp's contract with Harris & Zide retains Harris & Zide for the single and express purpose of prosecuting litigation. A true and correct copy of Citicorp's Agreement with Harris & Zide is attached hereto as **Exhibit 4**.

4. As reflected in defendant's privilege log, the redacted portions of the Account Detail Report from Mr. Bracken's litigation file reflects pre-litigation activities performed by me or Harris & Zide staff at the express direction of myself and/or Mr. Harris for purposes of (1) preparing to file a lawsuit against Mr. Bracken at the request of Harris & Zide's client, Citicorp, and (2) strategizing regarding litigation and pre-litigation activities. These activities reflect the opinions and thoughts of Mr. Harris and myself regarding litigation and pre-litigation strategy against Mr. Bracken. A true and correct copy of the Bracken Complaint which was filed on March 3, 2003, is attached hereto as **Exhibit 1**.

5. Although I believe defendants' response to Interrogatory No. 7 states clearly that no letters were mailed by Harris & Zide during 2001, let me definitively state that no letters were mailed by Harris & Zide during 2001.

6. As reflected in defendants' response to Interrogatory No. 8, we have estimated that 2,800 collection letters similar to the letter sent to Mr. Bracken on August 15, 2002, were sent to California residents during 2002. Without waiving any attorney work product privilege that exists, I developed this estimate at the direction of my attorneys at Murphy, Pearson, Bradley & Feeney. I developed this estimate using the number of litigation matters that were referred by Citicorp. I believe this method of estimation is reasonably accurate because letters similar to Mr. Bracken's August 15, 2002 letter were normally sent within a few days of Harris & Zide being retained to litigate a matter for Citicorp.

7. However, this method of estimation would not be reasonably accurate for purposes of calculating the number of "collection letters," whatever that means, that were sent by Harris & Zide to California debtors during 2002. This is because the number of other letters that were sent by Harris & Zide to California debtors during 2002 would be dependent on an infinite set of variables, including the substance of any communications with each individual debtor. The only way to

DECLARATION OF FLINT C. ZIDE IN SUPPORT OF OPPOSITION TO MOTION TO COMPEL

calculate the number of "collection letters," whatever that means, that were sent by Harris & Zide during 2002 to California debtors would be an individual review of each litigation file. This would involve reading the Account Detail Report for each litigation matter, which includes not only notes as to whether letters were sent and which letters were sent, but also pre-litigation preparation activities, summaries of telephonic and written communications with the debtor, and other notes reflecting litigation and pre-litigation strategy. Given the level of detail in the Account Detail Report, it is likely that it would take more than 5 minutes to review a single Account Detail Report for the purpose of determining how many letters were sent.

8. Harris & Zide does not calculate the percentage of lawsuits that are filed in comparison with the number of letters that are mailed by Harris & Zide. Moreover, such a calculation could only be made based on an individualized review of each litigation file, as described above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on this 30th day of December 2003, in South Pasadena, California.

By /s_____
FLINT C. ZIDE

JDC.10201270

DECLARATION OF FLINT C. ZIDE IN SUPPORT OF OPPOSITION TO MOTION TO COMPEL

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:** (Aviso a Acusado)
NATHAN L BRACKEN

AND DOES 1 THROUGH 5, INCLUSIVE

**YOU ARE BEING SUED BY PLAINTIFF:**
(A Ud. le esta demandando)
CITIBANK SOUTH DAKOTA, N.A.

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

You have 30 CALENDAR DAYS after this summons is served on you to file a typewritten response at this court.

A letter or phone call will not protect you; your typewritten response must be in proper legal form if you want the court to hear your case.

If you do not file your response on time, you may lose the case, and your wages, money and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

Despues de que le entreguen esta citación judicial usted tiene un plazo de 30 DIAS CALENDARIOS para presentar una respuesta escrita a máquina en esta corte.

Una carta o una llamada telefónica no le ofrecerá protección; su respuesta escrita a máquina tiene que cumplir con las formalidades legales apropiadas si usted quiere que la corte escuche su caso.

Si usted no presenta su respuesta a tiempo, puede perder el caso, y le pueden quitar su salario, su dinero y otras cosas de su propiedad sin aviso adicional por parte de la corte.

Existen otros requisitos legales. Puede que usted quiera llamar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de referencia de abogados o a una oficina de ayuda legal (vea el directorio telefónico).

The name and address of the court is: (El nombre y dirección de la corte es)
SUPERIOR COURT OF CALIFORNIA, SAN MATEO COUNTY
400 COUNTY CENTER
REDWOOD CITY, CA 94063
CENTRAL BRANCH, LIMITED CIVIL CASE

CASE NUMBER (Numero del Caso)
CLJ 429610

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es)

ROBERT T. HARRIS/FLINT C. ZIDE
STATE BAR NUMBERS 37970/160369
1445 HUNTINGTON DRIVE, SUITE 300
SOUTH PASADENA, CA 91030

(626) 799-8444

DATE: MAR 0 3 2003 (Fecha)     PEGGY THOMPSON     Clerk, by M. YOUNG, Deputy (Actuario) (Delegado)

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [X] as an individual defendant.
2. [ ] as the person sued under the fictitious name of (specify):
3. [ ] on behalf of (specify):
   under: [ ] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)     [ ] CCP 416.90 (individual)
          [ ] other:
4. [ ] by personal delivery on (date):

Form Adopted by Rule 982
Judicial Council of California
982(a)(9) (Rev. January 1, 1984)

(See reverse for Proof of Service)
**SUMMONS**

EXHIBIT 1

ROBERT T. HARRIS/FLINT C. ZIDE
LAW OFFICES OF HARRIS & ZIDE, L.L.P.
1445 Huntington Drive, Suite 300
South Pasadena, CA 91030
(626) 799-8444

Attorney for Plaintiff
State Bar Number 37970/160369

ENDORSED FILED
SAN MATEO COUNTY

MAR 0 3 2003

Clerk of the Superior Court
By M. YOUNG
DEPUTY CLERK

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO

CENTRAL BRANCH - LIMITED CIVIL

| | |
|---|---|
| CITIBANK SOUTH DAKOTA, N.A.<br><br>Plaintiff<br><br>vs.<br><br>NATHAN L. BRACKEN<br><br>AND DOES 1 THROUGH 5, INCLUSIVE<br>Defendant(s) | NO. CLJ 429610<br><br>COMPLAINT FOR MONEY:<br><br>BREACH OF CONTRACT; OPEN BOOK ACCOUNT; REASONABLE VALUE; ACCOUNT STATED |

PRINCIPAL SUED FOR: $3,298.38

COMES NOW PLAINTIFF, CITIBANK SOUTH DAKOTA, N.A. and for a cause of action against Defendant(s), and each of them alleges as follows:

### FIRST CAUSE OF ACTION BY PLAINTIFF
### CITIBANK AGAINST ALL DEFENDANTS
### COUNT ONE - BREACH OF CONTRACT

1. That Plaintiff CITIBANK is a National Bank authorized to do business and make loans in the State of California at rates and in the manner set forth in that certain Loan Agreement (hereinafter, "Agreement"), entered into by the parties hereto.

////////////////

Complaint  1

(hereinafter "the Agreement") whereby defendants obtained a credit account and agreed to repay the amount due.

7. That subsequent to the establishment of said account, defendant(s), and each of them, requested and accepted loan advances and/or purchases pursuant to the Agreement. Defendant(s) and each of them, agreed to repay all loan advances and purchases made and accepted, together with interest as set forth in the Agreement.

8. Each of the Agreements required defendants to make installment payments in the amounts and on the dates indicated in the Agreement.

9. That plaintiff has duly performed all of the terms, conditions and covenants on its part to be performed under the terms of the Agreement.

10. That the Agreement provides that if defendant(s), or any of them, fail to fulfill their obligations under the terms of the Agreement, plaintiff may declare the entire balance then outstanding immediately due and payable.

11. That on or about 8/12/02, defendant(s), and each of them, breached said Agreement by failing to make prescribed installment payments due under the Agreement.

12. That plaintiff has exercised its rights to declare the entire balance of the account(s) immediately due and payable. There is now unpaid, due, and owing from defendants to plaintiff the principal sum of $3,298.38.

13. Plaintiff represents that if a security interest does exist pursuant to its agreement with defendant(s), plaintiff has
////////////////

Complaint                     3

done nothing to enforce said security interest and upon entry of judgment herein waives said security interest.

14. That this action is not subject to Civil Code Section 1801 et seq. or Civil Code Section 2984.4.

15. That the Agreement provides for the payment of reasonable attorney's fees court costs in the even defendants' account is refereed to an attorney for collection.

16. That plaintiff has employed The Law Offices of Robert T. Harris, to represent it in connection with this action. Plaintiff requests that the court award plaintiff a sum as reasonable attorney's fees should plaintiff prevail on the matter herein.

### COUNT TWO - OPEN BOOK ACCOUNT

17. That plaintiff incorporates therein by reference the allegations of paragraphs 1, 2, 3, 4, 5, 9, 13, 14, 15, and 16 as if each and every allegation therein contained were herein set forth at length.

18. That within 4 years last past defendant(s), and each of them became indebted to plaintiff on an open book account in the sum of $3,298.38, which sum defendants, and each of them, agreed to pay.

19. That although demand was made, defendant(s), and each of them, have paid neither the whole nor any part of said sum.

20. That there is now due, owing and unpaid to plaintiff form defendant(s), and each of them, the sum of $3,298.38.

////////////////
////////////////

Complaint                              4

## COUNT THREE - REASONABLE VALUE

21. That plaintiff incorporates therein by reference the allegations of paragraphs 1, 2, 3, 4, 5, 9, 13, 14, 15, and 16, as if each and every allegation therein contained were herein set forth at length.

22. That within four years last past, defendant(s), and each of them, became indebted to plaintiff in the principal sum of $3,298.38 for the reasonable value of goods and services received by defendant at defendants' request which defendants agreed to repay to plaintiff.

23. That although demand was made, defendant(s), and each of them, have paid neither the whole nor any part of said sum.

24. That there is now due, owing and unpaid to plaintiff form defendant(s), and each of them, the sum of $3,298.38.

## COUNT FOUR - ACCOUNT STATED IN WRITING

25. That plaintiff incorporates herein by reference the allegations of paragraphs 1, 2, 3, 4, 5, 9, 13, 14, 15, and 16 as if each and every allegation therein contained were herein set forth at length.

26. That within four years last past an account was stated in writing between plaintiff and defendants, and each of them, wherein defendants, and each of them, owed plaintiff the principal sum of $3,298.38.

27. Defendants have had a reasonable time to object to the account as stated but have not done so, and have thus impliedly agreed that the account was correct as rendered.

////////////////

Complaint                    5

1     WHEREFORE, plaintiff prays judgment against defendants, and each of them, on each and every cause of action and count, as follows:

4     FIRST CAUSE OF ACTION:

5     1. For the principal sum of $3,298.38.

6     2. For costs of suit herein.

7     3. For reasonable attorney's fees pursuant to agreement or as allowed by law.

9     4. For such other and further relief as the court deems just and proper.

DATED: February 14, 2003

    LAW OFFICES OF HARRIS & ZIDE, L.L.P

    BY: _____
    ROBERT T. HARRIS/FLINT C. ZIDE
    Attorney for Plaintiff

JUL 03 2001

# AGREEMENT

This Agreement is between Citicorp Credit Services, Inc., a subsidiary of Citigroup, Inc. with offices located at 7930 NW 110th Street, Kansas City, MO 64153 ("CCSI" herein), and _Robert T. Hannric_, an attorney/law firm licensed to practice law in the state of _California_, with offices located at _1445 Huntington Dr. Ste 300_ _South Pasadena, CA 91030_ ("Attorney" herein).

## DEFINITIONS

For the purposes of this agreement, the following words and terms shall have the meaning ascribed to them below:

1. **Accounts**: means credit card or other financial accounts issued by CBSD, DCUS or UBNA, or any other affiliate of Citigroup.
2. **Affiliates**: means any corporate subsidiary owned by Citigroup, Inc., and includes but is not limited to CBSD, CBNV, DCUS and UBNA.
3. **Agreement**: when capitalized herein shall mean the executed form of this written document and all documents incorporated therein by reference, whether or not attached.
4. **Bankruptcy Litigation**: means any action or lawsuit brought by or against an affiliate in a federal bankruptcy court, including lawsuits brought to prevent discharge of a delinquent debt pursuant to section 523(a) of the Bankruptcy Code.
5. **Batch**: means the number of accounts placed with Attorney for collection on a monthly or annual basis.
6. **Citibank (Nevada), NA ("CBNV" herein)**: is the national bank that purchases some of the CBSD credit card receivables and is the real party in interest with respect to collection lawsuits filed to collect such debt.
7. **Citibank (South Dakota), NA ("CBSD" herein)**: is the national bank that issues most Citibank credit cards and is the real party in interest for litigation purposes with respect to some such accounts.
8. **Citibank (USA), NA ("CBUSA" herein)**: is the national bank that issues some Citibank credit cards and is the real party in interest in lawsuits filed to collect such debt.
9. **Citicorp Credit Services, Inc. ("CCSI" herein)**: is an affiliate service provider retained by CBSD, CBNV, DCUS and UBNA, pursuant to written agreements, to perform support services, including collecting outstanding debt.
10. **Citigroup, Inc. ("Citigroup" herein)**: is the parent holding company that directly or indirectly owns CCSI and the subsidiary corporations engaged in the bankcard business that it services.
11. **Court Costs**: shall mean the costs incurred to file a lawsuit and to serve pleadings on debtors being sued.
12. **Diners Club USA (DCUS" herein)**: shall mean the issuer and creditor of record for the Diners Club credit card. DCUSA is a subsidiary of CBSD.

EXHIBIT 4

13. **Dormant Judgment:** shall mean any judgment on which money has not been collected by Attorney for a period of two (2) years.
14. **Fraud Litigation:** shall mean lawsuits filed against a person other than the named cardholder to collect debt incurred by the unauthorized use of a credit card. The term shall include but not be limited to lawsuits filed to collect charges made after the date of the cardholder's death.
15. **Gross Debt Collected:** shall mean the amount of money collected by Attorney before deducting attorney fees, court costs and other litigation expenses.
16. **Litigation Management System:** shall mean the computer software system used to track the progress of collection, fraud and bankruptcy litigation and to calculate gross/net debt collected on batches that have been litigated to judgment or otherwise settled pre-suit or pre-judgment.
17. **Net Debt Collected:** shall mean gross debt collected, less net litigation expense on an individual account basis or by batch.
18. **Universal Bank, NA ("UBNA" herein):** is the affiliate of Citigroup that issues the AT&T Universal credit card and is the real party in interest for litigation purposes.
19. **Universal Card Services, Inc. ("UCS" herein):** is the affiliate service provider retained by UBNA by written agreement to provide support services, including debt collection activity, with respect to AT&T/Universal card accounts.

## ARTICLE 1: PURPOSE

The purpose of this Agreement is to retain Attorney to perform legal services. Such legal services shall include, but are not intended to be limited to collection, fraud and bankruptcy litigation and probate matters with respect to a specific affiliate's accounts and/or receivable. To the extent Attorney is retained to obtain judgments to collect debt, Attorney shall due diligence and reasonable care to enforce the judgment by execution, garnishment or other available enforcement procedures. Attorney shall be retained to perform specific legal services for which CCSI has agreed to pay a fee Exhibit A.

## ARTICLE 2: LITIGATION MANAGEMENT SYSTEMS

2.1 **Computer Systems:** Understanding that adequate computer systems critically important in managing collection litigation conducted on a large scale, CCSI shall have the right to require Attorney, at Attorney's expense, to use a specific computer system that is dedicated to the management of collection, fraud or bankruptcy litigation. CCSI may, in its discretion, use third party vendors to refer accounts to Attorney. If it does, Citibank shall have the right to require Attorney to use the computer system provided by the vendor, again at the Attorney's expense.

2.2 **Systemic Reports:** CCSI shall have the right to require Attorney to produce, or cooperate in producing, computer system generated reports at a frequency to be determined by CCSI. Such reports shall provide whatever information CCSI may from time to time require, regardless of whether the reports are generated by a computer system owned by Attorney or an outside vendor.

2.3 **Connection Expense:** CCSI shall assume and pay any expense required to connect its computer system to the attorney's computer system, unless the connection is made

3

through the internet, in which event CCSI and Attorney shall each assume and pay their own expense to connect to the internet. In the event CCSI uses the computer system of a third party vendor, each party shall assume and pay their individual expense of connecting to the vendor's system.

2.4 **Judicial and Financial Information:** Attorney shall maintain the following information about each individual account litigated on the computer system required by CCSI: date of referral; amount due; name of the court in which suit was filed; index/docket numbers; date and total amount of judgment broken down to reflect principal debt, reimbursed court costs and attorney fees, plus any accrued post-judgment interest; the extent to which the judgment has been satisfied.

## ARTICLE 3: RIGHTS AND DUTIES OF ATTORNEY

3.1 **Collection and Fraud Litigation:** Attorney shall file and prosecute lawsuits to collect debt authorized by the named cardholder or unauthorized debt incurred by third parties within whatever time frames CCSI may require in its work standards. However, Attorney shall use his/her own judgment and discretion in determining whether the facts involved merit filing the lawsuit, and whether is appropriate to file the lawsuit within thirty (30) days after mailing the initial demand letter and FDCPA debt validation notice. CCSI may manage the timeliness of Attorney filing lawsuits using its own work standards or those of an third party vendor. Management of Attorney's duties with respect to collection lawsuits shall be performed by the Litigation Management Unit located at CCSI site in Kansas City, Missouri. Any attempt to collect charges made on credit card accounts made after the date of the cardholder's death shall be considered collection of fraud charges for the purposes of Exhibit A attached hereto.

3.2 **Adversarial Bankruptcy Litigation:** Attorney shall defend issues arising in United States Bankruptcy Courts alleged by bankrupt debtors to exist against CCSI or an affiliate it services. Management of Attorney's duties in that regard shall be performed by the CCSI Legal Department, in conjunction with the Bankruptcy Unit of the CCSI Recovery Operation located in Kansas City, Missouri.

3.3 **Objection Litigation In Bankruptcy:** Attorney shall file and prosecute lawsuits to prevent discharge in bankruptcy of any charges that are considered to be fraudulently incurred on credit card accounts pursuant to Section 523(a) of the Bankruptcy Code. Management of Attorney's duties in that regard shall be performed by the Bankruptcy Unit located at the CCSI site in Kansas City, Missouri.

3.4 **Deceased Accounts:** With respect to debt incurred by a deceased cardholder, Attorney shall attempt to collect the debt from the estate of the decedent or from the spouse of the decedent if a probate proceeding has not been commenced, to the extent permitted by law. Attorney shall, whenever necessary and practicable, initiate summary probate proceedings for the purpose of collecting the debt incurred by a decedent. Management of Attorney's duties in with regard to debt owed by decedent's estate after the date of death shall be performed by the Deceased/Probate Unit located at the CCSI site in Kansas City, Missouri.

3.5 **Counterclaims:** Attorneys retained to defend a counterclaim filed in a collection lawsuit shall be paid the fee set out on Exhibit A. Management of the Attorney's

4

duties in that regard shall be performed by the Legal Department located at the CCSI site in Kansas City, Missouri.

3.6 **Time Barred Debt:** Attorney shall not file a lawsuit to collect debt that is barred by an applicable statute of limitations.

3.7 **Demand Amount:** Lawsuits filed by Attorney to collect debt shall demand recovery of the principal debt (balance owing on date of referral), post-judgment interest permitted by law, as well as court costs and reasonable attorney fees to the extent permitted by law. Attorney shall not, unless specifically authorized in writing, attempt to recover interest or finance charges on accounts between the period of time the account is referred to attorney and when judgment is obtained/filed. In the event Attorney files a lawsuit against a third party other than a customer cardholder to recover fraudulently incurred debt on a credit card account, Attorney shall demand and pursue recovery of punitive damages whenever practical and appropriate.

3.8 **Litigation Expense:** Attorney paid a contingent fee shall endeavor to limit the amount of expense incurred when maintaining litigation. Attorney need not obtain prior approval from CCSI to incur expense for filing and serving pleadings, filing a judgment or initiating proceedings to execute on the judgment by garnishment or other lawful process. However, Attorney shall obtain CCSI's consent prior to incurring any other form of expense. Attorneys paid an hourly fee to defend bankruptcy or counterclaim litigation shall obtain approval from CCSI prior to performing any specific service that will result in a fee of more than Three Thousand Dollars ($3,000).

3.9 **Work Standards:** Attorney shall comply with and abide by any work standards established by CCSI from time to time.

## ARTICLE 4: RIGHTS AND DUTIES OF CCSI

4.1 **Information and Witnesses:** CCSI shall provide Attorney, either directly or through duly appointed vendors, with the information necessary to commence litigation or to perform any other legal services requested. CCSI shall provide Attorneys with any information and/or documentation required for pre-trial discovery or trial. When timely requested by Attorney, CCSI shall provide, at its expense, witnesses for depositions, hearings or trials to prove the merits of a filed lawsuit.

4.2 **Litigation Expenses:** To expedite filing collection litigation and execution of judgments, CCSI authorizes Attorney to pay, on it's behalf, any filing or service fee required to accomplish such purposes. Unless CCSI specifically authorizes Attorney to deduct such fees from gross debt collected, CCSI shall reimburse Attorney for such expenses within forty-five (45) days after receiving a written expense statement. Such expense statements shall be submitted at such intervals as CCSI may require from time to time in its work standards.

4.3 **Contact with Debtor:** CCSI shall not contact the debtor for dunning purposes after the account has been referred to Attorney for collection litigation purposes. However, CCSI shall have the right to assign the account to outside collection agencies for dunning purposes prior to forwarding an account to Attorney for litigation.

**4.4 Not Exclusive Agreement:** This Agreement does not grant Attorney an exclusive right perform any legal service on behalf of CCSI or any of its affiliates in the state where Attorney is located. CCSI may recall any account prior to entry of judgment or final appeal and assign the legal work involved to another attorney. Attorney shall expeditiously do all things necessary to carry out such requests.

**4.5 Preparation For Trial:** Attorney acknowledges that a trial on any matter can expose CCSI and its corporate affiliates to judicial and public scrutiny. Attorney agrees to adequately prepare for trial, which shall include, but is not limited to, conducting whatever pre-trial discovery is necessary to fully understand the facts and legal issues involved in the case. CCSI reserves the right to require Attorney to conduct a given type or amount of pre-trial discovery regardless of the fee arrangement involved.

**4.6 Audits:** Attorney shall permit CCSI or its duly assigned vendor to perform audits at Attorney's offices to ensure adequate performance of this Agreement. Such audits may be conducted when deemed necessary by CCSI, without prior notice, during normal business hours. Attorney shall provide CCSI auditors with facilities and documentation necessary to perform the audit and shall fully cooperate with all reasonable requests made by the auditors that relate to the scope of this agreement.

**4.7 Case Management:** Attorney shall be primarily responsible for decisions made regarding legal issues affecting the defense or prosecution of any litigation. However, CCSI nevertheless reserves the right to oversee and review the methods, including computer systems and MIS, used by Attorneys to manage accounts being litigated.

**4.8 Forwarding Accounts:** When the distance between where the Attorney is located and the debtor resides makes it inconvenient for travel, CCSI may permit Attorney to forward accounts or filed lawsuits to attorneys located in the city where the debtor resides or where the lawsuit has been filed. In addition to obtaining CCSI's prior approval, Attorney shall ensure the agreement attached hereto as Exhibit "B" is executed prior to referring an account to another attorney each time consent is obtained from CCSI to transfer an account or lawsuit to another attorney. Attorney shall oversee and be responsible for the work product of the other attorney, and Attorney shall compensate the other attorney in the manner set out in Exhibit "A" attached hereto.

**4.9 Work Standards:** CCSI shall provide Attorney with written work standards setting out the manner in which Attorney shall be required to perform the legal services required by this Agreement. Such work standards may be unilaterally changed by CCSI at any time. Attorney shall be obligated to abide by and adhere to such changed work standards upon receiving a written of such changed work standards.

## ARTICLE 5: COMPENSATION

**5.1 Fee Arrangements:** Attorney shall be compensated for legal services in the manner specified in Exhibit A attached hereto. CCSI shall pay such fee within forty-five (45) days after receiving gross debt collected or the Attorneys billing statement for services rendered.

**5.2 Dormant Judgments:** CCSI may, in its sole discretion, transfer a dormant judgment to another attorney or to a collection agency for collection. In that event, CCSI shall pay Attorney five percent (5%) of net debt collected on the dormant judgment.

5.3 **Sale of Judgments:** CCSI may, in its sole discretion, sell dormant judgments. Attorney shall receive no fee from the proceeds of sale of any dormant judgment.

### ARTICLE 6: TERM AND TERMINATION

6.1 **Termination:** Either party may terminate this Agreement for any reason by giving written notice at least sixty (60) days prior to the termination date. Unless otherwise provided herein, either party may immediately terminate this Agreement without notice to the other party due to a material breach the Agreement's terms causing, or likely to cause, financial harm to the non-breaching party.

6.2 **Work In Progress:** Upon termination for cause or without cause Attorney shall account for all work in progress. Within thirty (30) calendar days after the termination date: (1) CCSI shall pay all earned attorney fees and advanced litigation expenses owing to Attorney: (2) Attorney shall remit all debt collected to CCSI; (3) at CCSI's request, Attorney shall transfer files on accounts not reduced to judgment to any other attorney designated by CCSI; and (4) Attorney shall return all files on unsatisfied judgments. Except as to dormant judgments, CCSI shall pay Attorney shall be paid an agreed upon contingent fee when a judgment obtained by Attorney is satisfied in whole or in part. However, Attorney shall not be paid a contingent fee on partial or complete satisfaction of judgments that are dormant on the termination date.

### ARTICLE 7: REMITTANCE OF DEBT COLLECTED

7.1 **Collection Litigation:** Unless otherwise directed by CCSI in its work standards, Attorney shall remit gross debt collected to CCSI. CCSI shall thereafter calculate the contingent fee owing to Attorney and pay such fee to attorney within thirty (30) days after receipt of the remittance from Attorney.

7.2 **Remittance Statement:** Attorney shall submit to CCSI, either electronically or by hard copy, at such intervals as CCSI may request, a statement showing the following information with respect to gross debt collected and remitted to CCSI: (1) the cardholder's name and account number; (3) identification number/code, if any, used by CCSI; (4) date and amount of debt recovered; and (5) the amount of any attorney fee owed to Attorney.

7.3 **Address:** Recoveries by Attorney shall the address designated in the work standards.

### ARTICLE 8: SPECIAL NOTICES

8.1 **Bankruptcy:** Upon becoming aware a debtor has filed bankruptcy, Attorney shall provide such information to CCSI at the address set out in the work standards.

8.2 **Counterclaims:** Upon becoming aware a debtor has filed a counterclaim, Attorney shall provide such information to CCSI at the address set out in the work standards

### ARTICLE 9: CONFIDENTIALITY AND PRIVACY

9.1 **General:** In performing services, Attorney may need access to information that is confidential and proprietary to CCSI, its customers and corporate affiliates ("Information"). CCSI does hereby limit Attorney's access to Information to

situations where they have a need to know the Information for litigation and/or other relevant purposes. Attorney shall use Information only for the purpose of providing services pursuant to this Agreement and shall not accumulate it or make other use of it in any way; Attorney shall not disclose information to any third party unless CCSI has previously consented to such disclosure. Attorney shall treat Information with at least the same degree of care that it treats its own confidential information and shall exercise reasonable precautions to prevent disclosure of Information to unauthorized parties. Attorney shall immediately notify CCSI of any loss or unauthorized disclosure or use of Information that comes to Attorney's attention. For the purposes of this Agreement, notice shall be considered transmitted immediately if sent by telephone or fax. These obligations shall survive the termination of this Agreement.

**9.2 Liability:** Attorney shall be liable to CCSI for any monetary damage directly and proximately caused by a breach of the terms of this Article.

**9.3 Disposition of Information:** Upon the demand of CCSI or termination of the Agreement, Attorney shall comply with the CCSI's instructions regarding the disposition of Information in Attorney's possession or control.

**9.4 Privacy:** Citigroup has adopted Privacy Principles to protect customers against unwarranted dissemination of financial and personal information. A copy of the Citigroup Privacy Statement is attached as Exhibit "C". Attorney agrees to abide by the requirements of Exhibit "C" to the same extent as Citigroup and its subsidiary corporations. In addition to any other right to audit Attorney granted to CCSI in this Agreement, CCSI shall have the right to audit Attorney's compliance with the Privacy Principles set out in Exhibit "C" without prior notice during normal business hours.

**9.4 Compliance Audits:** In addition to any other right to audit Attorney granted by this Agreement, CCSI shall have the right to audit Attorney's place of business during normal business hours, without prior notice, for the purpose of ensuring Attorney's compliance with the requirements of this Article.

## ARTICLE 10: GENERAL

**10.1 Status of the Parties:** Attorney is retained as an independent contractor and not as an employee or agent of CCSI or any of its affiliates, and all rights and duties arising out of this Agreement shall be construed accordingly.

**10.2 Entire Agreement:** This Agreement, and any exhibits incorporated herein and/or attached hereto, constitute the entire agreement of the parties. There are no other prior, contemporaneous or collateral agreements between them. And to the extent such prior, contemporaneous agreements are deemed to exist, this Agreement shall supersede them.

**10.3 Waiver:** The failure of either party to enforce a provision of this Agreement shall not prevent that party from subsequently enforcing such part or provision.

**10.4 Independent Construction:** If any part or provision of this Agreement is declared unenforceable by a court of competent jurisdiction, such determination shall be effective only as to the offending part or provision, and all other parts or provisions shall remain in force.

10.5 **Modification:** This Agreement may modified by written agreement of both parties.
10.6 **Indemnification:** Attorney agrees to indemnify and hold CCSI harmless from the consequences of any legal action threatened or filed by a third party arising out of Attorney's performance or attempted performance of this Agreement, including, but not limited to, attorney fees paid by CCSI to defend against a threatened or filed legal action.
10.7 **Insurance:** Attorney shall maintain a policy of professional liability (malpractice) insurance with coverage amounts that CCSI may require from time-to-time. Attorney shall provide proof of such insurance coverage to CCSI upon request.
10.8 **Exhibits:** All Exhibits referenced herein and physically attached hereto are incorporated herein as if set forth in full.
10.9 **Compliance With Laws:** Attorney's debt collection activities shall at all times comply with applicable federal, state and local laws and administrative regulations. CCSI may, in its discretion, immediately terminate this Agreement for cause without prior notice if, in its sole discretion, it determines Attorney has violated or likely will violate any such law or administrative regulation.
10.10 **Choice of Law:** The law of the state where Attorney is located shall govern the terms and performance of this Agreement.

**CCSI**

By _(signature)_

(Signature)

_Jeanetta M. Brown_
(Print/Stamp Name)

JEANETTE M. BROWN, ASST. VICE PRESIDENT
PERSONNEL #3381209
CITICORP CREDIT SERVICES, INC.
7920 NW 110TH STREET
KANSAS CITY, MO 64153
(816) 505-6779

Date Executed: 06/08/01


**ATTORNEYS**

By _(signature)_

_Robert T. Harris_
(Print/Stamp Name)


Date Executed: 5/15/01

9

**EXHIBIT A:** Attorney is deemed retained to perform any of the following described services for which a fee arrangement has been designated:

1. Collection litigation: _____ ___% of net debt collected

2. Fraud Litigation: _____

3. Counterclaims: _____

4. Bankruptcy Litigation:
   a. Adversarial Actions: _____

   b. Objection Litigation: Attorney shall be paid a fee of 45% of gross debt collected, less court costs, for all recoveries prior to trial. The fee shall increase to 55% for all debt collected after trial. In addition to those contingent fees, Attorney shall be paid $50 for sending a demand letter to the debtor's attorney, and $100 for attending an examination permitted by section 2004 of the United States Bankruptcy Code. Any expense incurred in filing a lawsuit in bankruptcy court shall be reimbursed to Attorney pursuant to paragraph 4.2 of this Agreement.

5. Probate Matters:
   a. Demand Letter _____
   b. Initiate Summary probate: _____

6. Transfer Fees: Attorney shall retain five percent (5%) of any contingent fee and pay the balance of the fee over to any attorney retained to provide legal services pursuant to Exhibit "C."

### EXHIBIT B: Referral Agreement

This Agreement is made between _____,
("Associate Attorney" herein) an attorney licensed to practice law in the state of
_____, and _____ ("Primary Attorney"
herein). In consideration of the mutual terms, conditions and promises set out herein, the
parties hereto agree as follows:

1. That Primary Attorney has been retained by Citicorp Credit Service, Inc. (CCSI) pursuant to the agreement attached hereto to provide legal services with respect to the following described account or accounts:

2. The legal services for which he/she was retained consist of the following:

3. For providing such services, Primary Attorney shall pay over to Associate Attorney all but five percent (5%) of the contingent fee payable for such services pursuant to Exhibit "A" of the attached agreement between the Primary Attorney and CCSI.

4. Associate Attorney agrees to abide by the duties and to perform the obligations imposed on Primary Attorney pursuant to the attached Agreement with CCSI. And Associate Attorney agrees to indemnify and hold both Primary Attorney and CCSI harmless for any expense, including attorney fees, related to threatened or filed litigation arising out the performance or attempted performance of this Agreement by Associate Attorney.

**Primary Attorney**                                **Associate Attorney**

_____              _____

(Print/Stamp Name)                                  (Print/Stamp Name)

Date Executed:_____              Date Executed:_____