UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| NATHAN BRACKEN,<br>on behalf of himself and<br>all others similarly situated,<br><br>          Plaintiff,<br><br>  v.<br><br>HARRIS & ZIDE L.L.P.,<br>ROBERT T. HARRIS, FLINT C. ZIDE,<br>FRANK TIRRE,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)   NO. C 02-05146 RMW PVT<br>)<br>)<br>)   CLASS ACTION<br>)<br>)<br>)   JURY DEMANDED |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
<u>PLAINTIFF'S MOTION TO COMPEL</u>**

Dated: January 5, 2004

                                          Respectfully submitted,

                                          By:
                                          Ronald Wilcox, #176601
                                          2160 The Alameda, First Floor, Suite F
                                          San Jose, CA 95126
                                          Tel: (408) 296-0400
                                          Fax: (408) 296-0486

                                          Brian L. Bromberg
                                          Brian L. Bromberg, P.C.
                                          40 Exchange Place, Suite 604
                                          New York, NY 10005
                                          Tel: (212) 248-7906
                                          Fax: (212) 248-7908

                                          Lance A. Raphael
                                          Stacy M. Bardo
                                          180 West Washington, Suite 700
                                          Chicago, IL 60602
                                          Tel: (312) 782-5808
                                          Fax: (312) 377-9930

# Table of Contents

Table of Authorities……………………………………………………………………………

I.	Facts (Both Contested and Uncontested)……………………………………………1

    A.	Plaintiff Nathan Bracken…………………………………………………1

    B.	Potential Plaintiff Patricia Lidin………………………………………….2

    C.	Robert T. Harris' Death……………………………………………….2

    D.	Status of the Case…………………………………………………….3

II.	Legal Discussion…………………………………………………………………4

    A.	The information and documents in Defendants' possession regarding Plaintiff's alleged debts is relevant and material and does not seek attorney-client privileged information or information protected by the attorney work product doctrine; Defendants have waived all claims of privilege……………………………………4

        1.	By Defendants' own admission, the documents are relevant……………………………………………………………4

        2.	The documents are not subject to the attorney-client privilege; Defendants have waived all privilege claims………………………..6

        3.	The documents are not attorney work product……………………..8

        4.	Defendants must produce the complete un-redacted "Account Detail Report" and any other documents received from Citicorp; Defendants have waived all objections by providing an incomplete privilege log…10

    B.	Information regarding the Defendants' office staffing, the total number of collection letters sent, and the total number of lawsuits filed is directly relevant to Defendants' attorney review capabilities……………………………………………………11

    C.	Defendants refuse to state in what percentage of cases they file suit………………14

    D.	Defendants' collection manual must be produced………………………………..15

    E.	Plaintiff's request for all documents consulted in order to respond to interrogatories is neither overly broad nor privileged under the attorney work product doctrine………………………………………………………………..…16

III.	Conclusion………………………………………………………………………..17

**Table of Authorities**

*Boyd v. Wexler*, 275 F.3d 642 (7th Cir. 2001)……………………………………….12-14

*Clarke v. American Commerce Nat'l Bank,* 974 F.2d 127 (9th Cir. 1992)…………………8

*Garfinkle v. Acata National Corp.*, 64 F.R.D. 688, 690 (S.D.N.Y. 1974)…………….…..9

*Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926 (N.D. Cal. 1976)……………..8

*Hopkins Theatre, Inc. v. RKO Radio Pictures, Inc.,* 18 F.R.D. 379 (S.D..N.Y. 1956)….....16

*James v. Home Construction Co.*, 621 F.2d 727 (5th Cir. 1980)………… ……………….3

*Maple Drive-In Theatre Corp. Radio-Keith-Orpheum Corp.*, 153 F.Supp. 240 (D.C.N.Y. 1956)……………………………………………………………………………………..16

*Maritime Cinema Serv. Corp. v. Movies En Route, Inc.*, 60 F.R.D. 587 (S.D.N.Y. 1973)……………………………………………………………………………………..17

*Miller v. Wolpoff & Abramson, L.L.P.* (2d Cir. 2003) 321 F.3d 292 ………………….12-14

*Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002)……………………………………...12-14

*Panter v. Marshall Field & Co.*, 80 F.R.D. 718 (N.D.Ill. 1978)……………………..…..9

*United States v. National Steel Corp.*, 26 F.R.D. 599 (S.D. Texas 1960)………………….16

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| NATHAN BRACKEN, on behalf of himself and all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) |
| v. | ) NO. C 02-05146 RMW |
| HARRIS & ZIDE L.L.P., ROBERT T. HARRIS, FLINT C. ZIDE, FRANK TIRRE, | ) ) CLASS ACTION ) ) JURY DEMANDED |
| Defendants. | ) |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
PLAINTIFF'S MOTION TO COMPEL**

**I.     Facts**

  **A.     Plaintiff Nathan Bracken**

On or about August 15, 2002, Defendants mailed Plaintiff a letter threatening immediate suit over a Citicorp credit card debt.[1] Defendants' debt collection letter forms the basis for this case. On October 23, 2002, Plaintiff filed this case under the FDCPA.[2] On January 22, 2003, Plaintiff moved to amend the complaint to convert this case into a class action.[3] On February 18, 2003, Plaintiff filed a class action complaint after Defendants belatedly stipulated to allow the amendment.[4] On March 3, 2003, more than six months after sending the August 15, 2002 letter,

---

[1]  A copy of the letter is attached as <u>Exhibit A</u>.

[2]  PACER, Document #1.

[3]  PACER, Document #8.

[4]  PACER, Document #14.

Reply Memorandum in Further Support of Plaintiff's Motion to Compel, C02-05146 RMW PVT  - 1

Defendants filed suit against Plaintiff.[5]  Defendants are now claiming that all of the documents received from Citicorp regarding Plaintiff were not prepared in the ordinary course of business but are privileged documents reviewed in preparation for the March 3, 2003 lawsuit.  It is apparently this basis on which Defendants are withholding documents relevant to Plaintiff's case.

### B. Potential Plaintiff Patricia Lidin

On or about April 11, 2002, Defendants mailed Patricia Lidin a letter in a form substantially similar or materially identical to the August 15, 2002 letter mailed to Nathan Bracken.[6]  In the April 11, 2002 letter, Defendants threatened immediate suit over a Nextcard credit card debt. As of the date of this memorandum, January 5, 2004, Defendants have not filed suit.  A motion to add Patricia Lidin as a plaintiff is pending.  On October 17, 2003 during a motion hearing, Judge Whyte orally approved the amendment; the parties are waiting for a formal order.  On December 15, 2003, Plaintiff served discovery requests regarding Defendants' communications with Patricia Lidin.  These discovery demands mirror the demands sent regarding Bracken and complete answers are necessary to take meaningful depositions of the Defendants, scheduled for January 19, 2004 and January 20, 2004.[7]  Any holding in connection with this motion should apply to the Lidin discovery requests as well.

### C. Robert T. Harris' Death

Plaintiff believed the case had been settled during an ADR session held on May 28, 2003.

---

[5]   Exhibit #1 to "Declaration of Flint C. Zide in Support of Opposition to Motion to Compel," dated December 30, 2003.  PACER, Document #102.

[6]   A copy of the letter is attached as <u>Exhibit B</u>.

[7]   A copy of the Lidin discovery demands is attached as <u>Exhibit C</u>.

Reply Memorandum in Further Support of Plaintiff's Motion to Compel, C02-05146 RMW PVT  - 2

But Defendants' counsel has been seeking to capitalize on an unfortunate turn of events. One of the Defendants, Robert T. Harris, passed away on July 8, 2003, while the parties' counsel were drawing up settlement papers.

Defendants' counsel or Defendants' estate is now claiming that Harris' net worth at the time of the violation can no longer be counted as part of the class recovery. This is wrong for a number of reasons. First, remedial statutes like the FDCPA survive death.[8] Second, even if the remedial statute did not survive death, the cap on damages (1% of net worth) is based upon a calculation that should occur at the time of the violation, not after the fact. This prevents a defendant from pouring out its assets after a complaint has been filed in order to escape the measure of damages, as they existed at the time of the violation. So even if Harris' estate cannot be held responsible in this case, the other two Defendants can and the Court should find the measure of damages to be capped by computing in Harris' net worth. Plaintiff's motion to add the two co-trustees of the Robert T. Harris Trust as defendants is pending before Judge Whyte.

Defendants have failed to respond to Plaintiff's suggestion that, for the sake of judicial economy, the parties refer this matter back to the ADR mediator, Ike Lasater. Defendants' CMC statement of October 10, 2003, stated, "Defendants are in the process of considering this suggestion."[9] Defendants have yet to respond.

### D. Status of the Case

In November 2003, after the October 17, 2003 hearing regarding Defendants' motion to dismiss/motion for summary judgment, and Plaintiff's cross-motion to add Patricia Lidin as an

---

[8] *See, e.g., James v. Home Construction Co.*, 621 F.2d 727, 730 (5th Cir 1980)(claims under TILA were not penal and therefore survived death). Damage provisions of the FDCPA are modeled after the damages provision of TILA.

[9] PACER, Document # 73.

Reply Memorandum in Further Support of Plaintiff's Motion to Compel, C02-05146 RMW PVT  - 3

additional class representative, the parties scheduled depositions and discussed Defendants' failure to adequately respond to discovery.  By November 2003, it was apparent that Defendants had no interest in settling the case.

The parties have scheduled depositions for the following dates:

- ■ Deposition of Defendants' Rule 30(b)(6) witness – January 19, 2004
- ■ Deposition of Defendant Flint Zide – January 20, 2004
- ■ Deposition of Plaintiff Nathan Bracken – January 21, 2004
- ■ Deposition of non-party Patricia Lidin – January 22, 2004

In order to meaningfully proceed with the depositions, Defendants must supply the discovery demanded.  And Defendants must fully and timely respond to Plaintiff's discovery requests regarding Patricia Lidin, served December 15, 2003.

## II.    Legal Discussion

### A.    The information and documents in Defendants' possession regarding Plaintiff's alleged debts is relevant and material and does not seek attorney-client privileged information or information protected by the attorney work product doctrine; Defendants have waived all claims of privilege

#### 1.    By Defendants' own admission, the documents are relevant

Many issues in this case can be decided in Plaintiff's favor by simply looking at the face of the August 15, 2002 debt collection letter Defendants sent Plaintiff.  But a number of issues can only be determined after conducting discovery of Defendants' debt collection practices. Discovery must be taken regarding:

- ■ Whether Defendants are operating a debt collection mill masquerading as a law firm, that is, whether Defendants are conducting a meaningful review before sending debt collection letters; and
- ■ Whether Defendants are threatening imminent litigation without any intent to act on these threats.

Reply Memorandum in Further Support of Plaintiff's Motion to Compel, C02-05146 RMW PVT  - 4

In order to answer these questions, Plaintiff has requested information as to what documents related to Plaintiff's alleged debts were in Defendants' possession before Defendants' communications with Plaintiff.[10]  In an article on their own law firm website, Defendants' attorneys, Mark Ellis and June Coleman, admit that this is one of the fundamental issues in answering the question "Is Your Attorney Meaningfully Involved in Your Collection Process?"[11]

---

[10]    **Interrogatory No. 2** – Identify all documents related to Plaintiff's alleged debts which were in each of the Defendants' physical possession when each of the letters bearing a letterhead of Harris & Zide, LLC (including without limitation the letter attached as <u>Exhibit A</u> to the Complaint) were transmitted to the Plaintiff about the Plaintiff's alleged debts.  In so doing, specify the date the document was received, the nature of the document, when and by whom the document was reviewed, and the letter(s) to which the document relates.

**Interrogatory No. 18** – Identify all documents transmitted <u>to</u> Defendants regarding Plaintiff's alleged debts to Citibank South Dakota, N.A. on or before the date Defendants first communicated with the Plaintiff.

**Request for Production of Documents No. 1** – All documents transmitted to Defendants regarding Plaintiff's alleged debts to Citibank South Dakota, N.A. on or before the date Defendants first communicated with the Plaintiff.

**RPD No. 14** – All collection records maintained by Defendants as to Plaintiff's accounts, with a key to abbreviations used thereon, such as codes for letters, personnel, activities.

**RPD No. 15** – All documents, logs, and correspondence relating to Plaintiff's alleged debts to creditors, including but not limited to Citibank South Dakota, N.A.

[11]    Here are the procedures that Mark Ellis and June Coleman recommend to their clients on their law firm website in order to comply with the circuit court and district court opinions requiring meaningful attorney review:

>   **<u>Recommendations</u>**
>
>   If an agency incorporates the use of form collection demands on attorney letterhead, the agency must incorporate "meaningful attorney involvement" into its collection process. We suggest that such meaningful attorney involvement include the following:
>
>   1.      hiring of an attorney;

Reply Memorandum in Further Support of Plaintiff's Motion to Compel, C02-05146 RMW PVT  - 5

**2.     The documents are not subject to the attorney-client privilege; Defendants have waived all privilege claims**

Instead of responding to Plaintiff's requests, Defendants claim that the information is governed by attorney-client and attorney work-product privilege. This is false. A declaration dated March 21, 2003, submitted by Robert T. Harris in Support of Defendants' pending motion to dismiss, states:

> On August 15, 2002, I reviewed the firm's file regarding Mr. Bracken. Mr. Bracken owed $3,298.38 on his account, number 4128 0040 4765 7912. I analyzed all of the information provided by Citicorp, including the following: (1) the amount owed – for purposes of verifying that the balance is high enough to justify the expense of bringing a lawsuit; (2) Mr. Bracken's residential address – for purposes of verifying proper venue for a lawsuit, including both county and state; (3) the fact that Mr.

> 2.     having the attorney create or review and approve the form collection letters for compliance with state and federal laws and regulations;
>
> 3.     having the attorney review and approve your collection process, including the parameters by which form collection demands on attorney letterhead are mailed;
>
> 4.     having the attorney review all of the debtor information received from the agency's client prior to the mailing of any collection demands on attorney letterhead;
>
> 5.     having the attorney create some record of this review, which should be permanently maintained with the agency; and
>
> 6.     having the attorney supervise the collection process which involves the mailing of collection demands on attorney letterhead to ensure compliance with the attorney approved collection process.
>
> Establishing a record of such meaningful professional involvement will go a long way towards protecting the agency from claims of FDCPA violations based on the use of collection demands on attorney letterhead and towards defending your agency and your attorney *on the frontline*.

A copy of the 2001 article, "Is Your Attorney Meaningfully Involved in Your Collection Process?" is attached as <u>Exhibit D</u> (emphasis added).

Reply Memorandum in Further Support of Plaintiff's Motion to Compel, C02-05146 RMW PVT  - 6

> Bracken was employed – for purposes of viability of collection after judgment, (4) Mr. Bracken's employment address – for purposes of service of the summons and complaint; and (5) the account number and the type of debt incurred by Mr. Bracken (Citicorp credit card) for purposes of (a) confirming that under the client agreement Harris & Zide had authority to bring suit on behalf of Citicorp, which it did, (b) confirming that the Citicorp Agreement had interest and attorneys' fees provisions, and (c) confirming that the matter was within the statute of limitations.[12]

Defendants' own records reflect that the entire review of these five items took no more than nine minutes.[13]

None of the five items is privileged, confidential or attorney work product. All of this information would routinely appear on monthly bills or on the credit card application form. Monthly bills and credit card applications are, of course, discoverable: (a) by simple cardholder request, (b) by request under the validation provision of the Fair Debt Collection Practice Act,[14] or (c) during the course of any litigation brought by the debt collection law firm. Any collection notes would also be discoverable. In fact, collection notes could be a consumer's only record of disputes, mistakes or forbearance agreements. Finally, none of Citicorp's bills constitutes attorney "work product." Because Citicorp presumably prepares bills not for litigation but for billing, no attorney plays any role in preparing Citicorp's monthly bills and statements. Thus, none of this material is confidential or privileged.

The fact that Defendants willingly put this information into affidavit form filed with the

---

[12] A copy of the Harris Affidavit is attached as <u>Exhibit E</u>.

[13] A copy of Defendants' "Account Detail Report" is attached as <u>Exhibit F</u>. The report appears to show receipt of Plaintiff's account at 5:49 p.m. on August 15, 2002, completion of "account reviewed by attorney" by 5:58 p.m., and printing and sending of Defendants' first letter to Plaintiff eight minutes later at 6:06 p.m.

[14] 15 U.S.C. § 1692g.

Reply Memorandum in Further Support of Plaintiff's Motion to Compel, C02-05146 RMW PVT  - 7

Court demonstrates that Defendants: (a) have waived all rights to confidentiality, and (b) have never considered this information privileged. Because Plaintiff has asked to see the underlying Citicorp documents, Defendants have only now attempted to assert privilege.

Instead of turning over the documents, Defendants cite the Ninth Circuit case of *Clarke v. American Commerce Nat'l Bank*,[15] for the generic statement that "Under the attorney-client privilege, confidential communications made by a client to an attorney to obtain legal services are protected from disclosure." Defendants then claim that because Citicorp transmitted documents to Defendants for the purpose of collecting on a debt, the documents must be privileged. But Defendants are attempting to mislead this Court. Only "**confidential** communications made by a client to an attorney to obtain legal services are protected from disclosure."[16] Whether, in defense counsel's words, "Citicorp consulted Harris & Zide for the [alleged] purpose of filing a lawsuit against Mr. Bracken"[17] is immaterial. There is nothing about the documents allegedly transmitted by Citicorp to Defendants that makes them "prima facie" confidential.

### 3. The documents are not attorney work product

"The work product doctrine is aimed at protecting the effectiveness of a lawyer's trial preparations by immunizing such materials from discovery."[18] To establish applicability of the work-product doctrine, the proponent must show that the materials were prepared in anticipation

---

[15]    974 F.2d 127, 129 (9th Cir. 1992).

[16]    *Id.* (emphasis added)

[17]    *See* Opposition to Bracken's Motion to Compel Further Responses to Interrogatories and Requests for Production of Documents, p. 4, dated December 30, 2003. PACER, Document # 100.

[18]    *Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926, 930 (N.D.Cal. 1976).

of litigation or in preparation for trial.[19]  There is no requirement that the litigation have already been commenced in order for the work-product doctrine to be operative, however, there must be more than a remote possibility of litigation.[20]  Materials prepared in the ordinary course of business may not be protected from discovery by the work-product doctrine.[21]

Defendants have not made this showing.  Presumably, the source of the information transmitted by Citicorp to Defendants is Plaintiff's monthly billing records and credit card application.  Are Defendants claiming that Citicorp sent Plaintiff monthly credit card billing statements in anticipation of trial?  Are Defendants claiming that Citicorp did not prepare Plaintiff's monthly billing records in the ordinary course of business?

The fact that Citicorp transmitted its billing records electronically to Defendants for collection does not turn unprivileged, non-confidential documents prepared in the ordinary course of business into attorney work product.  Defendants' claim that by providing the documents received from Citicorp provides a "road map of what information Harris & Zide used for purposes of developing the case against Mr. Bracken on behalf of Citicorp" is absurd.  Defendants' own description of their so-called "road map" consists of a claim to have conducted a brief review – less than nine minutes – of the following ordinary five items of unprivileged, non-confidential information:

- ■ The amount owed – for purposes of verifying that the balance is high enough to justify the expense of bringing a lawsuit;

---

[19]   Fed. R. Civ. P. 26(b)(3); *Holmgren v. State Farm Mutual Auto Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992).

[20]   *Garfinkle v. Acata National Corp.*, 64 F.R.D. 688, 690 (S.D.N.Y. 1974); *Panter v. Mashall Field & Co.*, 80 F.R.D. 718, 725 n. 6 (N.D.Ill. 1978).

[21]   *See* Advisory Committee Comments to Fed. R. Civ. P. 26(b)(3), 1966 Amendment.

- Mr. Bracken's residential address – for purposes of verifying proper venue for a lawsuit, including both county and state;

- The fact that Mr. Bracken was employed – for purposes of viability of collection after judgment,

- Mr. Bracken's employment address – for purposes of service of the summons and complaint; and

- The account number and the type of debt incurred by Mr. Bracken (Citicorp credit card).

Finally, Defendants filed the Citicorp debt collection lawsuit on March 3, 2003. That is, Defendants essentially filed a strategic state court counter-suit more than six months after the August 15, 2002 letter, and more than four months after Plaintiff filed this case. With respect to Patricia Lidin, more than twenty months have gone by without Defendants having filed suit. Thus, Defendants' claim of having been provided with Citicorp documents in anticipation of immediate suit is a sham.

    **4.    Defendants must produce the complete un-redacted "Account Detail Report" and any other documents received from Citicorp; Defendants have waived all objections by providing an incomplete privilege log**

In response to this motion, Defendants have removed the redaction from additional portions of the "Attorney Detail Report." These portions appear to relate to telephone calls that allegedly took place between Defendants' representatives and various third parties. But Defendants have not adequately explained their reasons for leaving half the document redacted. Defendants' privilege log sheds no light on the matter.[22]

All the "privilege log" shows is "Internal Attorney Notes" of "Various" dates. The asserted reasons for the privilege are "Redacted Portion: Attorney Client Communications,

---

[22]    A copy of the Defendants' privilege log is attached as <u>Exhibit I</u> to Plaintiff's December 9, 2003 motion papers.

Reply Memorandum in Further Support of Plaintiff's Motion to Compel, C02-05146 RMW PVT  - 10

Attorney Work Product Doctrine, Relevancy." Defendants give no indication of the precise dates of communication between correspondents, the names of the participants in the communication or the subject matter of the communication. It is respectfully submitted that Defendants have thus waived all privilege claims.

The same holds true for the "Various other documents received from Citicorp after August 15, 2002." Defendants give no indication of the precise dates of the documents or from whom or to whom they were sent. Instead, Defendants assert that they consist of "Attorney Client Communications, Attorney Work Product Doctrine, and Relevancy." It is respectfully submitted that Defendants have waived all privilege claims on these as well.

**B.     Information regarding the Defendants' office staffing, the total number of collection letters sent, and the total number of lawsuits filed is directly relevant to Defendants' attorney review capabilities**

One of the main issues in this case is the level of attorney review that can be completed given the number of files open at one time and the number of lawsuits pending. To this end, Plaintiff issued discovery requests on these topics.[23] These requests relate to the number of collection letters sent by Defendants in 2001 and 2002. Defendants' response that these requests seek information that is "irrelevant, overbroad and burdensome" is just plain wrong under the

---

[23]     **Interrogatory No. 7** – Set forth the number of collection letters sent on Harris & Zide, LLC letterhead during 2001 or provide your best estimate based on your records to the nearest 100.

**Interrogatory No. 8** – Set forth the number of collection letters sent on Harris & Zide, LLC letterhead during 2002 or provide your best estimate based on your records to the nearest 100.

**Interrogatory No. 14** – State the job description for each staff member each Defendant employs at each of the Defendants' locations (attorney, paralegal, secretary, etc.) and how many staff members are employed in each job description at each location. Identify all staff personnel at Defendants' California offices.

Reply Memorandum in Further Support of Plaintiff's Motion to Compel, C02-05146 RMW PVT  - 11

Seventh Circuit decisions of *Nielsen v. Dickerson*,[24] and *Boyd v. Wexler*.[25]  In *Nielsen*, the Seventh Circuit held that: "[T]he numbers (recall that [the client] referred [the attorney] an average of some 2,000 accounts per month) and assembly-line fashion in which [the attorney's] letter was issued betray the purely nominal nature of his participation in the collection process."  And in *Boyd*, the Seventh Circuit held that the high volume of mail handled by a debt-collecting attorney was relevant to his credibility.  Although the attorney claimed in an affidavit to have reviewed plaintiff's file before sending letters, the <u>volume</u> of mail suggested both that the attorney might not have had time to review the file and that he might not remember accurately.  In the recent case of *Miller v. Wolpoff & Abramson, LLP*,[26] the Second Circuit adopted the Seventh Circuit's holdings in *Boyd* and *Nielsen* and reversed the district court's granting of summary judgment without first allowing discovery regarding pattern and practice.  The Second Circuit explained its reasons as follows:

> [I]f discovery in this case were to reveal that W&A and UC&S handled this high volume of accounts, received only the limited information described in the attorney affidavits, reviewed the collection files with such speed that no independent judgment could be found to have been exercised, and then issued form collection letters with the push of a button, a reasonable jury could conclude that W&A and UC&S lacked sufficient professional involvement with plaintiff's file that the letters could be said to be from an attorney.[27]

Here the situation is identical to that in *Boyd*, *Wexler*, and *Miller*.  Defendants claim to have reviewed the following five items: (a) "the amount owed"; (b) "Mr. Bracken's residential address"; (c) "the fact that Mr. Bracken was employed"; (d) "Mr.

---

[24]     307 F.3d 623, 637 (7th Cir. 2002).

[25]     275 F.3d 642, 648 (7th Cir. 2002).

[26]     321 F.3d 292 (2d Cir. 2003).

[27]     *Miller*, 321 F.3d at 306.

Reply Memorandum in Further Support of Plaintiff's Motion to Compel, C02-05146 RMW PVT  - 12

Bracken's employment address"; and (e) "the account number and the type of debt incurred by Mr. Bracken (Citicorp credit card)."[28] Defendants' own records reflect that the entire review of these five items took no more than nine minutes.[29] Defendants claim to have conducted this review while juggling a caseload of "approximately 7,000 collection lawsuits in 2002, at a rate of approximately 600 collection lawsuits per month."[30]

Thus, based on at least three circuit court decisions and numerous district court decisions, Defendants are entitled to learn the size and resources of Defendants' debt collection operation.  Defendants' claim that it would take seven months of work to calculate the number of debt collection letters sent over one year is incredible and flies in the face of normal discovery demands answered in other FDCPA actions.

One additional important matter bears mentioning.  Defendants have refused to produce information as to Defendants' employees, claiming that the deceased Robert T. Harris is the "only witness relevant to the handling of Mr. Bracken's account."[31]  This is false. First, the newly un-redacted portions of Defendants' "Account Detail Report" show

---

[28]  A copy of the Harris Affidavit is attached as <u>Exhibit E</u>.

[29]  A copy of Defendants' "Account Detail Report" is attached as <u>Exhibit F</u>.  The report appears to show receipt of Plaintiff's account at 5:49 p.m. on August 15, 2002, completion of "account reviewed by attorney" by 5:58 p.m., and printing and sending of Defendants' first letter to Plaintiff eight minutes later at 6:06 p.m.

[30]  *See* Paragraph 2 of "Declaration of Flint C. Zide in Support of Opposition to Motion to Compel," dated December 30, 2003.  PACER, Document #102.

[31]  *See* Opposition to Bracken's Motion to Compel Further Responses to Interrogatories and Requests for Production of Documents, p. 10, dated December 30, 2003.  PACER, Document # 100.

entries by "Frank," "Robert" and "Gabriel," and "Erick."[32]  Defendants appear to be delegating collection activities to non-attorneys.  Therefore, this interrogatory goes directly to Defendants' pattern and practice, and credibility.   These questions go directly to the issue – discussed at length in *Boyd*, *Nielsen*, and *Miller* – of whether Defendants have sufficient staff to meaningfully review collection accounts before letters are sent, and whether non-lawyer staff is performing the functions that should be performed by lawyers before letters are sent out on lawyer letterhead.  Second, Mr. Harris has passed away.  Thus, it has becomes even more imperative to discover Defendants' practices with other witnesses.

      **C.**      **Defendants refuse to state in what percentage of cases they file suit**

Plaintiff asked Defendants as follows:

> **Interrogatory No. 11** – In what percent of the number of cases set forth in Interrogatories 7, 8, and 9 have the Defendants filed suit in California if the debtor did not pay?  Please break down the response with respect to each interrogatory.

Defendants' response is that the law firm files suit against 100% of the California debtors who received a letter similar to the letter at issue unless Harris & Zide discover that it would be frivolous or illegal to file a lawsuit.

Defendants' response is evasive.  The interrogatory asks for the percentage of cases in which suit is filed.  This is directly relevant to the issue of whether Defendants intended to carry out their threats of imminent suit.  Defendants' interrogatory response is essentially that suit is filed in 100% of cases unless suit isn't filed, listing four circumstances under which suit allegedly isn't filed.  Again, this response is circuitous: Defendants file suit in every case except

---

[32]     A copy of Defendants' "Account Detail Report" is attached as <u>Exhibit F</u>.

in those four circumstances when they do not. Now Defendants must, at the very least, give the number of times when they do not file suit.

Defendants' claim that it would take six to twelve weeks of work to calculate the number of debt collection letters sent over one year. But Defendants' collection system is computerized. If Defendants can allegedly meaningfully review a collection account in under nine minutes, then it should not take Defendants much time at all to figure out the percentage of cases in which a collection letter, in the form sent to Bracken dated August 15, 2002, is followed by a debt collection lawsuit.

### D. Defendants' collection manual must be produced

Defendants do not deny that Plaintiff's request for "All manuals, procedures, and protocols used by Defendants to comply with the Fair Debt Collection Practices Act" is relevant.[33] Instead, Defendants object to producing the 2001 American Collectors Association document, claiming: (a) that it is copyrighted and cannot be photocopied, and (b) that Plaintiffs can obtain a copy from the ACA. First, Defendants assume that the three-year-old guide is available. Second, copyrighted documents are routinely copied for use during litigation. For example, litigants routinely submit cases printed from Westlaw and Lexis, and portions of treatises and Internet websites. Finally, Plaintiff has no intention of using ACA materials outside of litigation. Neither Plaintiffs nor his attorneys have any intention of going into the debt collection business. Production of a copy of the manual under court order for purposes of litigation could only be considered "fair use." Presumably, Defendants would have no objection to submitting the manual to a local printer for copying if so ordered by this Court.

---

[33]   **RPD No. 6** – All manuals, procedures, and protocols used by Defendants to comply with the Fair Debt Collection Practices Act.

Reply Memorandum in Further Support of Plaintiff's Motion to Compel, C02-05146 RMW PVT  - 15

### E. Plaintiff's request for all documents consulted in order to respond to interrogatories is neither overly broad nor privileged under the attorney work product doctrine

Plaintiff has a right to know how Defendants came up with the statistics and claims produced in response to the Interrogatories. When Defendants claim to have sent "roughly, approximately 2,700 letters" from October 23, 2001 to October 23, 2002, a printout of the individuals to whom the letters were sent must have been consulted.[34] When Defendants claim to have filed approximately 22 collection lawsuits in 2001 and approximately 2,839 collection lawsuits in 2002, a printout of the individuals sued must have been consulted.[35] Defendants' thought processes are irrelevant; Plaintiff must view the "raw" documents from which the responses were prepared. This interrogatory is the equivalent of asking in a deposition "How did you come up with these numbers?" or "What documents or information did you consult to come up with these numbers?" There is, of course, nothing objectionable about asking such questions.

Three of the cases that Defendants cite in opposition to this interrogatory request are completely irrelevant. In each of these three cases, *Maple Drive-In Theatre Corp. v. Radio-Keith-Orpheum Corp.*,[36] *United States v. National Steel Corp.*,[37] and *Hopkins Theatre, Inc. v. RKO Radio Pictures, Inc.*,[38] the interrogatory asked for the names of persons assisting in preparation of answers to interrogatories. Plaintiff is not requesting the names of these

---

[34] *See* Defendants' response to Interrogatory No. 9, <u>Exhibit D</u> to Plaintiff's December 9, 2003 motion papers.

[35] *See* Defendants' response to Interrogatory No. 15, <u>Exhibit D</u> to Plaintiff's December 9, 2003 motion papers.

[36]   153 F.Supp. 240, 244 (D.C.N.Y. 1956).

[37]   26 F.R.D. 599, 600 (S.D. Texas 1960).

[38]   18 F.R.D. 379, 383 (S.D.N.Y. 1956).

Reply Memorandum in Further Support of Plaintiff's Motion to Compel, C02-05146 RMW PVT  - 16

individuals; Plaintiff is requesting the documents used to prepare the responses.

Defendants have cited only one case in which a court directly addressed Plaintiff's request. In *Maritime Cinema Serv. Corp. v. Movies En Route, Inc.*,[39] a district court decision from New York, the Court did not engage in any analysis and merely ruled in passing that the request was overbroad. *Maritime* was a complicated antirust action involving major motion picture distributors. This FDCPA case involving basic questions centering on a one-page debt collection letter is nowhere near as complicated. Accordingly, Defendants' response should not be overbroad.

### III. Conclusion

Because Defendants cannot sustain their burden of proof as to any of their boilerplate objections, Plaintiff's Motion to Compel should be granted.

> Respectfully submitted,
> Brian L. Bromberg, P.C.
>
> /s/ Brian L. Bromberg
> Brian L. Bromberg

---

[39] 60 F.R.D. 587, 591-92 (S.D.N.Y. 1973).

Reply Memorandum in Further Support of Plaintiff's Motion to Compel, C02-05146 RMW PVT  - 17