TALES FROM THE FRONTLINE:
# IS YOUR ATTORNEY MEANINGFULLY INVOLVED IN YOUR COLLECTION PROCESS?

*By Mark E. Ellis and June D. Coleman*

O ne of the issues which repeatedly raises its ugly head in our cases is whether an agency's use of an attorney's name on (or in) collection demands is legal under the Fair Debt Collection Practices Act ("FDCPA"). The answer depends on whether the attorney whose letterhead is being used is actually and "meaningfully" involved in the collection process. If the answer is yes, in general, the collection agency will be deemed in compliance with the FDCPA. If the answer is no, the agency's use of the attorney's name on (or in) its collection demands is likely to subject themselves and/or the attorney to FDCPA liability. Unfortunately, as in many areas of the FDCPA, "meaningful involvement" is not subject to precise definition and the cases interpreting what constitutes "meaningful involvement" are conflicting and perhaps impossible to reconcile. The purpose of this article is to provide some guidance as to the factors and parameters the courts employ in their analysis of determining what is "meaningful attorney involvement".

**A. Collection Demands May Not Falsely Imply Correspondence Is From an Attorney**

The FDCPA addresses communications from attorneys at **15 U.S.C. § 1692e**, which states:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> …
> (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.
> …
> (9) The use or distribution of any written communication … which creates a false impression as to its source, authorization, or approval.

Pursuant to the FDCPA, an attorney cannot simply "lend" his name, letterhead, or form letters to a collection agency without being meaningfully involved in the collection process. **Avila v. Rubin**, 95 F.3d 222, 228 (7th Cir. 1996); see also **15 U.S.C. § 1692j** (making it

illegal to design, compile, or furnish any form knowing that the form would be used to create the false belief that someone is involved in the collection process when that person is not involved). Courts recognize that sometimes collection agencies make reference to an attorney in its collection demands so as to put additional pressure on debtors to pay by threatening further attorney involvement if payment is not made. **Avila**, *supra*, 95F.3d at 229. As noted by the **Avila** court: "An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking." *Id*.

Courts have held that a communication which appears to be from an attorney is not false, deceptive, or misleading if the attorney has "meaningful professional involvement" in the collection process. "Meaningful professional involvement" is the subject of varying interpretations. These interpretations are often raised in relation to mass-mailed collection demands on attorney letterhead. See, e.g., **Clomon v. Jackson**, 988 F.2d 1314, 1320-21 (2d Cir. 1993).

Nonetheless, other courts have found no violation for mass-mailed collection demands on attorney letterhead when the attorney reviews the computerized debtor information and has other meaningful professional involvement in the collection process. **Boyd v. Wexler and Wexler**, no. 00 C 2555, 2000 U.S. Dist. LEXIS 19582 (N.D. Ill. Nov. 21, 2000). Consequently, there exists a wide range of rulings interpreting **section 1692e(3)** as to what level of attorney involvement meets the minimal acceptable threshold of "meaningful professional involvement."

B. **Cases Requiring Greater Attorney Involvement**

In **Clomon**, the court concluded that the attorney, Jackson, had violated the FDCPA by making a collection demand on attorney letterhead because:

> [The attorney] did not review each debtor's file; he did not determine when particular letters should be sent; he did not approve the sending of particular letters based upon the recommendations of others; and he did not see particular letters before they were send—indeed he did not even know the identities of the persons to whom the letters were issued. In short, the fact that [the attorney] played virtually no day-to-day role in the debt collection process supports the conclusion that the collection letters were not "from" [the attorney] in any meaningful sense of that word.

**Clomon**, *supra*, 988 F.2d at 1320.

Likewise, in **Avila**, *supra*, the Court found the attorney violated the FDCPA by sending collection demands on his letterhead when (1) the attorney had only approved the general form of the collection letters and (2) he sent approximately 270,000 collection demands per year or 1,068 per working day or 133 per working hour. The attorney, however, did not personally prepare, sign, or otherwise review any of the letters sent or review any debtor information. Instead, he only provided instruction to assistants who determined whether to mail a collection letter to a debtor. **Avila**, *supra*, 84 F.3d at 225, 228-29.

In **Masuda v. Thomas Richards & Co.**, 759 F.Supp. 1456 (C.D. Cal. 1991), the Court found a violation of the FDCPA when an attorney collection demand was sent on attorney letterhead, but the attorney only assisted in drafting the collection demand, and did not determine when to send the collection demands. Furthermore, the attorney did not review any information on the debtor. *Id*. at 1460-61.

In *dicta*, the **Clomon** court discussed whether mass-mailed collection letters on attorney letterhead could **ever** be legal under the FDCPA:

> [W]e are mindful of the appellant's concern regarding the economic necessity of mass mailing in the debt collection industry. It is apparent that mass mailing may sometimes be the only feasible means of contacting a large number of delinquent debtors, particularly when many of those debtors owe relatively small sums. But it is also true that the FDCPA sets boundaries within which debt collectors must operate. **No mass mailing technique is permissible—regardless of how effective it might be—if that technique constitutes a false, deceptive, or misleading communication. As we have found here, the use of an attorney's signature on a collection letter implies that the letter is "from" the attorney who signed it; it implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent**. We have also found here that the use of an attorney's signature implies—at least in the absence of language to the contrary—that the attorney signing the letter formed an opinion about how to manage the a case of the debtor to whom the letter was sent. In a mass mailing, these implications are frequently false: the attorney whose signature is used might play no role either in sending the letters or in determining who should receive them. For this reason, **there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restrictions imposed by §1692e**.

**Clomon**, *supra*, 988 F.2d at 1320 (emphasis added).

### C. Cases Requiring Less Attorney Involvement

In **Boyd v. Wexler**, *supra*, on the other hand, the Court denied the plaintiff's summary judgment against the collection attorneys whose name appeared on mass-mailed collection letters. Attorney Wexler was directly and personally involved in reviewing debtor files and sending the collection letters to them. The court wrote:

> Wexler has established that he was directly and personally involved in collecting debts from Plaintiffs, and that Wexler & Wexler follows detailed debt collection procedures. First, it is undisputed that Wexler reviewed Plaintiffs' file materials, determined that Plaintiffs' debts were valid, and recommended that Plaintiffs receive collection letters. Second, it is undisputed that Wexler & Wexler has a process in place to handle the debt collection matters referred to them by creditor-clients, including the matters related to Plaintiffs. As part of this process, Wexler & Wexler receives a copy of the debtor's file from the creditor-client [in either electronic or hardcopy format], creates a batch report, sends the internal paperwork, along with any additional material received from the client, to the reviewing attorney, and the attorney reviews each document in the file. The attorney then documents his review of the file on a log sheet. Thus, Wexler & Wexler attorneys review and approve all letters before they are mailed and retain the discretion to decide whether to send out a collection letter at all.

**Boyd**, *supra*, 2000 U.S. Dist. LEXIS 19582 at *9.

In **Boyd**, the plaintiffs noted that approximately 439,606 collection letters were mailed during 9 months, which meant that each attorney would have reviewed 900 separate files a day, for only a few seconds each. *Id*. at *10. Plaintiffs therefore argued "it is obvious that no meaningful attorney involvement could possibly exist in the production and mailing of these letters." *Id*. The **Boyd** Court rejected this argument and explained:

> The Court is sympathetic to Plaintiffs' claims that Wexler and the attorneys at Wexler & Wexler do not spend as much time on each individual debtor file as they ideally should. Yet, it must be noted that the quality of Wexler's law practice is not the issue. The issue is whether Wexler's letters were inherently deceptive because of a lack of meaningful attorney involvement. The evidence presented by Plaintiff simply is not sufficiently probative to create a genuine issue of material fact to dispute Wexler's evidence that he was directly and personally involved in reviewing

Plaintiffs' files and sending the collection letters to him.

*Id*. at *10-11 (distinguishing **Avila**, *supra*, 84 F.3d 222; **Clomon**, *supra*, 988 F.2d 1314; **Nielsen v. Dickerson**, 1999 U.S. Dist. LEXIS 13931, no. 98 C 5909 (N.D. Ill. Sept. 9, 1999); and **Nance v. Friedman**, 2000 U.S. Dist. LEXIS 19907, no. 98 C 6720 (N.D. Ill. Aug. 28, 2000)).

In **Dalton v. FMA Ents., Inc.**, 953 F.Supp. 1525, 1530-32 (M.D. Fla. 1997), the Court held that a genuine issue of fact existed as to whether an attorney had meaningful professional involvement in the collection process when the attorney (1) set up a procedure whereby collectors forward accounts to him for review prior to mailing the attorney letterhead collection demands, (2) reviewed the debtor's information is on a spreadsheet, and (3) audited 10% of the accounts.

Likewise, in **Anthes v. Transworld Systems, Inc.**, 765 F.Supp. 162 (Del. 1991), the Court found no FDCPA violation in the use of attorney letterhead for collection demands when the attorney actually received information from the debt collector as to each debtor and sent the demand form letter from his office. This was true even though the attorney (1) did not investigate the validity of the debt, and (2) did not independently determine whether one of his letters should be sent. *Id*. at 166-67.

### D. California Case Law

In the Ninth Circuit (which, of course, covers California), only a few cases have addressed this "meaningful involvement" issue. In 1991, the Central District of California (which covers Los Angeles and its environs) found that the FDCPA had been violated when a collection demand was sent on attorney letterhead. Although the attorney assisted in drafting the form collection demand, he did not determine when to send the collection demand to a debtor, and he did not review any information on any particular debtor before a particular letter was sent. **Masuda**, *supra*, 759 F.Supp. at 1460-61.

In 1995, following **Clomon v. Jackson**, *supra*, the Eastern District of California (which includes the Sacramento area and places north of Sacramento) held that collection demands on attorney letterhead were not misleading if the attorney (1) had reviewed each debtor's file and (2) had some knowledge about the specific alleged debt, i.e. had conducted an individualized review of a debtor's case. **Newman v. Checkrite**, 912 F. Supp. 1354, 1382 (E.D. Cal. 1995).

In 2000, the Northern District of California (which encompasses the San Francisco Bay Area and its environs) held that an attorney does not have the necessary meaningful professional involvement "[i]f the attorney did not first conduct an individual review of the debtor's case, or if the attorney did not determine if a particular letter should be sent or if the

attorney did not know the identity of the person to whom the letter was sent." **Irwin v. Mascott**, 112 F.Supp.2d 937, 949 (N.D. Cal. 2000). The attorney in this matter had reviewed the debtor's information by way of a computerized spreadsheet, checking for accounts that, among other things, stood out because (1) debtor information was missing, (2) the debtor's state of residence did not match the state referred to in the text of the collection letter, or (3) the check date put the debt beyond the statute of limitations. Nonetheless, the Court aligned itself with the **Clomon** decision and rejected the claim that the mass mailing of collection demands on attorney letterhead was legal. *Id*.

At least one California Bar Association has opined on the possible deceptiveness of the use mass-mailed collection demands made on attorney letterhead and whether such letters would violate an attorney's ethical obligations. In the Los Angeles County Bar Formal Ethics Opinion, no. 338 (Sept. 27, 1973), the Los Angeles County Bar concluded that an attorney would **not** mislead debtors (and therefore not violate ethical constraints and professional responsibilities) by mass mailing collection letters on attorney letterhead when (1) the attorney established a procedure by which determinations were made to mail particular letters to particular people, (2) the form letter was initially reviewed by the attorney, (3) the attorney supervised the staff, and (4) the staff followed the procedures. The Ethics Committee concluded:

> If in fact a particular account is turned over to the attorney for collection in the usual sense and a special attorney-client relationship is thus created, then certainly it would not be improper for the attorney to use the letterhead described for collection purposes. …
>
> In the opinion of the Committee, under the facts, an attorney-client relationship has been created. The Committee also is of the opinion that even as to those accounts which the attorney can reasonably predict (e.g., by reason of the small amount involved, etc.), will be returned to the corporation's credit department without any action by the attorney section other than sending the computer prepared attorney letters, such accounts have in fact been turned over to the attorney for collection "in the usual sense" and, therefore, no deception is practiced. The attorney has previously established a criteria in accordance with which all accounts are to be handled. All the accounts have been referred and turned over to the attorney for collection in accordance with previously established criteria. This is collection "in the usual sense" even though economic factors may enter into an attorney's decision to terminate collection efforts, and the automatic implementation of such factors does not change the situation.

(*Id*. at pp. 37-38 (citations omitted).)

From a review of the cases, it becomes clear that the Ninth Circuit requires some level of individualized review by an attorney of the debtor's information for compliance with the FDCPA. However, the language in these cases is ambiguous concerning what constitutes "meaningful professional involvement." Furthermore, none of the Ninth Circuit decisions appear to address the tension created by the practice of collection lawyers to routinely utilize modern technology, such as computers, in their practice.

For instance, using sort functions, computerized spreadsheets can permit an attorney to conduct an individualized review of large amounts of debtor information efficiently. This modern technology can provide the means by which we refute the **Clomon** *dicta* that "there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restrictions imposed by **§1692e**." See **Clomon**, *supra*, 988 F.2d at 1320. Courts outside of the Ninth Circuit, such as the Northern District of Illinois in the more recent **Boyd** opinion, *supra*, as well as the Middle District of Florida in the **Dalton** opinion, *supra*, have addressed the use of modern technology. These decisions may assist in bringing the Ninth Circuit's FDCPA opinions into the twenty-first century.

### D. Recommendations

If an agency incorporates the use of form collection demands on attorney letterhead, the agency must incorporate "meaningful attorney involvement" into its collection process. We suggest that such meaningful attorney involvement include the following:

1. hiring of an attorney;

2. having the attorney create or review and approve the form collection letters for compliance with state and federal laws and regulations;

3. having the attorney review and approve your collection process, including the parameters by which form collection demands on attorney letterhead are mailed;

4. having the attorney review all of the debtor information received from the agency's client prior to the mailing of any collection demands on attorney letterhead;

5. having the attorney create some record of this review, which should be permanently maintained with the agency; and

6. having the attorney supervise the collection process which

involves the mailing of collection demands on attorney letterhead to ensure compliance with the attorney approved collection process.

Establishing a record of such meaningful professional involvement will go a long way towards protecting the agency from claims of FDCPA violations based on the use of collection demands on attorney letterhead and towards defending your agency and your attorney **on the frontline**.

---

*This material has been prepared by Murphy, Pearson, Bradley & Feeney for information purposes only and is not legal advice. Receipt of the information is not intended to create, and receipt does not constitute an attorney-client relationship between the sender and the receiver. Readers should not act upon this information without seeking professional counsel.*

<u>Back</u> to NEWS & REPORTS *page*



©2001 Murphy, Pearson, Bradley & Feeney
http://www.mpbf.com